# Exhibit B

# Murray Declaration

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------- x
In re:                                                     :   Chapter 11
                                                           :
FREEDOM COMMUNICATIONS HOLDINGS,                           :   Case No. 09-13046 (BLS)
INC., et al.,                                              :
                                                           :
              Debtors.[1]                                  :   Jointly Administered
---------------------------------------------------------- x

### DECLARATION OF PHILIP W. MURRAY IN SUPPORT OF APPLICATION OF DEBTORS FOR ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF DIRKS, VAN ESSEN & MURRAY AS SALE ADVISOR PURSUANT TO 11 U.S.C. §§ 327(a), 328(a) AND 1107, FED. R. BANKR. P. 2014(A) AND DEL. BANKR. L.R. 2014-1, *NUNC PRO TUNC* TO THE PETITION DATE

I, Philip W. Murray, state the following under penalty of perjury.

1.  I am the Executive Vice President of Dirks, Van Essen & Murray (DV&M), which has an office located at 119 East Marcy Street, Suite 100, Santa Fe, New Mexico 87501. I am authorized to make this declaration (the "Declaration") in support of the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: Freedom Communications Holdings, Inc. (2814); Freedom Communications, Inc. (0750); Freedom Broadcasting, Inc. (0025); Freedom Broadcasting of Florida, Inc. (6581); Freedom Broadcasting of Florida Licensee, L.L.C. (1198); Freedom Broadcasting of Michigan, Inc. (6110); Freedom Broadcasting of Michigan Licensee, L.L.C. (1122); Freedom Broadcasting of New York, Inc. (6522); Freedom Broadcasting of New York Licensee, L.L.C. (9356); Freedom Broadcasting of Oregon, Inc. (7291); Freedom Broadcasting of Oregon Licensee, L.L.C. (9295); Freedom Broadcasting of Southern New England, Inc. (7274); Freedom Broadcasting of Southern New England Licensee, L.L.C. (1177); Freedom Broadcasting of Texas, Inc. (2093); Freedom Broadcasting of Texas Licensee, L.L.C. (1147); Freedom Broadcasting of Tennessee, Inc. (7961); Freedom Broadcasting of Tennessee Licensee, L.L.C. (9430); Freedom Magazines, Inc. (0328); Freedom Metro Information, Inc. (1604); Freedom Newspapers, Inc. (3240); Orange County Register Communications, Inc. (7980); OCR Community Publications, Inc. (9752); OCR Information Marketing, Inc. (7983); Appeal-Democrat, Inc. (4121); Florida Freedom Newspapers, Inc. (4227); Freedom Arizona Information, Inc. (5796); Freedom Colorado Information, Inc. (7806); Freedom Eastern North Carolina Communications, Inc. (5563); Freedom Newspapers of Illinois, Inc. (2222); Freedom Newspapers of Southwestern Arizona, Inc. (5797); Freedom Shelby Star, Inc. (8425); Illinois Freedom Newspapers, Inc. (8308); Missouri Freedom Newspapers, Inc. (8310); Odessa American (7714); The Times-News Publishing Company (0230); Victor Valley Publishing Company (6082); Daily Press (3610); Freedom Newspaper Acquisitions, Inc. (4322); The Clovis News-Journal (5820); Freedom Newspapers of New Mexico L.L.C. (5360); Gaston Gazette LLP (4885); Lima News (6918); Porterville Recorder Company (7735); Seymour Tribune Company (7550); Victorville Publishing Company (7617); Freedom Newspapers (7766); The Creative Spot, L.L.C. (2420); Freedom Interactive Newspapers, Inc. (9343); Freedom Interactive Newspapers of Texas, Inc. (8187); Freedom Services, Inc. (3125). The address for Freedom Communications Holdings, Inc. and certain other Debtors is 17666 Fitch, Irvine, California 92614.

Error! Unknown document property name.
NY\1569421.1

application (the "Application")[2] to retain and employ DV&M as sale advisor for Freedom Communications Holdings, Inc. and its affiliates and subsidiaries that have commenced the instant chapter 11 cases (collectively, the "Debtors"), *nunc pro tunc* to September 1, 2009 (the "Petition Date"), pursuant to sections 327(a), 328(a) and 1107 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 2014-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"). The Debtors seek to retain DV&M pursuant to the terms and conditions set forth in the engagement letter (the "Engagement Letter") between the Debtors and DV&M. The Engagement Letter is attached hereto as Appendix 1.

2. The statements set forth in this Declaration are based upon my personal knowledge, upon information and belief, and upon client matter records kept in the ordinary course of business that were reviewed by me or other personnel of DV&M and its affiliates.

3. Based on reasonable inquiry, (i) DV&M does not hold or represent any interest adverse to the Debtors and their estates for matters for which DV&M is to be retained, and DV&M does not hold or represent any interest adverse to the Debtors or their estates. DV&M has informed the Debtors that DV&M has no material connection with the Debtors, their creditors, any other party in interest, their respective attorneys and accountants, the U.S. Trustee, or any person employed by the office of the U.S. Trustee in the Debtors' chapter 11 cases.

4. As such, I believe DV&M and the DV&M Professionals are disinterested as such term is defined pursuant to section 101(14) of the Bankruptcy Code.

5. Upon information and belief, as of the Petition Date, the Debtors did not owe DV&M in respect of services provided to the Debtors.

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Application.

6. DV&M submits that it holds no adverse interest as to the matters for which it has been employed by the Debtors. DV&M will periodically review its files during the pendency of these chapter 11 cases to ensure that no conflicts or other disqualifying circumstances exist or arise. If any new relevant facts or relationships are discovered or arise, DV&M will use reasonable efforts to identify such further developments and will file promptly a supplemental declaration, as required by Bankruptcy Rule 2014(a).

7. The nature and extent of the services that DV&M proposes to render, as may be requested by the Debtors and as may be agreed to by DV&M, include, but are not limited to, the following:

   a. use its expertise to assess the overall value of the Phoenix Properties;

   b. develop a strategy for effecting the sale, including but not limited to, solicitation materials and marketing strategies, including Phoenix Properties's key investment attributes and upside potential;

   c. identify and establish contact with prospective purchasers;

   d. prepare and distribute solicitations of indicative interest;

   e. serve as the primary point of contact with potential buyers;

   f. provide responses to questions, comments and concerns from prospective buyers;

   g. perform necessary functions to create a competitive bidding environment;

   h. assist in the evaluation of indicative and binding bids from prospective buyers; and

   i. assist in negotiating a final transaction value and definitive transaction documents with the selected buyer(s).

8. Upon information and belief, DV&M is the most active firm in the country specializing exclusively in newspaper mergers and acquisitions. The firm has been involved in hundreds of newspapers transactions in its nearly 30-year history, which in the

3

aggregate total more than $12 billion. DV&M routinely handles more than half of all transactions involving daily newspapers each year, including eight of the thirteen such transactions consummated or announced so far in 2009.

9. Upon information and belief, since its inception in 1980, the DV&M has focused solely on assisting companies in the sale and acquisition of daily newspapers for a variety of purposes. It has thus established itself as the industry's top authority on transactions and valuations. The firm has successfully closed hundreds of newspaper transactions and has handled many more deals than all other firms combined. Since the mid-1990's, DV&M has been involved in more than half of all daily newspaper transactions, while all other firms combined have accounted for less than 20%. DV&M has significant qualifications and experience in performing the scope of work described above. DV&M is a national professional services firm with thousands of personnel.

10. I believe DV&M's resources, capabilities and experience in advising the Debtors in the sale of the Phoenix Properties are crucial to the Debtors' successful restructuring. An experienced sales advisor such as DV&M fulfills a critical need that complements the services offered by the Debtors' other restructuring professionals. For these reasons, I believe that the Debtors require the services of a capable and experienced sales advisor firm such as DV&M.

11. DV&M intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with the Debtors' chapter 11 cases, subject to the Court's approval and in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, any applicable orders of the Court and

consistent with the proposed compensation guidelines set forth in the Engagement Letter (the "Fee Structure").

12. In summary, the Fee Structure provides for the following compensation to DV&M:

   a. At the time of closing, the Debtors will pay DV&M, a commission (the "Commission") based on the total gross sales price. The Commission will be computed according to the 5-4-3-2-1 formula [that is, the sum of five percent (5%) of the first $1 million of the sale price, four percent (4%) of the second $1 million, three percent (3%) of the third $1 million, two percent (2%) of the fourth $1 million, and one percent (1%) of any amount greater than $4 million.

   b. The total gross price shall include noncompetition agreements, consulting agreements, payments over time, promissory notes or their equivalents. In the case of payments over time or promissory notes, the full Commission shall be paid at the time of closing on any of the Phoenix Properties assets.

   c. DV&M will seek reimbursement of all reasonable out-of-pocket expenses incurred during this engagement, including, but not limited to, travel and lodging, direct identifiable data processing, document production, publishing services and communication charges, courier services, working meals, reasonable fees and expenses of DV&M's counsel and other necessary expenditures, payable upon rendition of invoices setting forth in reasonable detail the nature and amount of such expenses.

13. Upon information and belief, the Fee Structure is consistent with DV&M's normal and customary billing practices for comparably sized and complex sales, both in and out-of-court, involving the services to be provided in these chapter 11 cases. The compensation arrangement provided for in the Engagement Letter and generally described above is consistent with and typical of arrangements entered into by DV&M and other sales advisors of comparable standing in connection with the rendering of similar services to clients such as the Debtors. I believe that the foregoing compensation arrangement is both reasonable and market-based.

14. Notwithstanding the approval of the compensation requested herein, all of DV&M's fees and out-of-pocket expenses in this case will be subject to approval of the Court upon proper application by DV&M in accordance with section 328 of the Bankruptcy Code, the fee and expense guidelines established by the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee"), and any other applicable requirements or orders of the Court; further, the section 328(a) standard of review shall not limit the scope of review and objection, if any, of the U.S. Trustee.

15. Upon information and belief, the terms and conditions of the Engagement Letter were negotiated by the Debtors and DV&M at arm's length and in good faith. In light of the fact that the Debtors need DV&M's services to successfully reorganize, I submit that the terms and conditions of the Engagement Letter are reasonable and in the best interests of the Debtors, their estates and creditors.

Executed on this 17th day of September, 2009.

Philip W. Murray
Title: Executive Vice President
Dirks, Van Essen & Murray

# APPENDIX 1

# ENGAGEMENT LETTER

NY\1569421.1



## Dirks, Van Essen & Murray

**PERSONAL & CONFIDENTIAL**

Mr. Burl Osborne
Freedom Communications, Inc.
17666 Fitch
Irvine, CA 92614

Dear Burl:

We appreciate your confidence in retaining us to assist you in the sale of the Phoenix Metropolitan Area Properties (the "Newspapers") owned by Freedom Communications, Inc. (the "Company"). You may be assured that we shall use our best efforts to help you receive a full and fair price for the Newspapers.

The purpose of this letter is to confirm our understanding and to state the terms of our agreement concerning the services that Dirks, Van Essen & Murray will perform in connection with your desired sale or exchange of all or a portion of the assets of the Newspapers.

We shall identify for you logical prospective purchasers and shall work with you in formulating a strategy for effecting the sale. We shall provide financial and other information about the Newspapers to all such prospective purchasers that you expressly approve. To the degree desired by you, we shall participate with you and/or your representatives in any negotiations concerning the prospective sale.

It is understood that the purchaser or purchasers must be completely acceptable to you and that the terms and conditions are completely subject to your approval. You agree to make all appropriate Newspaper records available to us and to disclose immediately any material change in the Newspapers at any time prior to the closing. We agree to treat any and all documents and information received from you concerning the Newspapers as strictly confidential and to use this material solely in our efforts on your behalf.

Our company shall act as your exclusive sales agent in connection with this transaction or series of transactions for a period of one (1) year from the date of your acceptance of this letter. Should you consummate a sale of the Newspapers during the term of this agreement, the terms of this agreement shall apply.

Mr. Burl Osborne
Page 2

You agree to indemnify our company against any claims arising out of any actions taken or omitted by us in the performance of this agreement; provided, however, that such indemnity will not apply to any claim arising out of the negligence or willful misconduct of our company.

In consideration for our services, if the Newspapers are sold during the term of this agreement, you will pay us at the time of closing (and as part of the closing) a commission based on the total gross sales price. The commission will be computed according to the 5-4-3-2-1, formula [that is, the sum of five percent (5%) of the first $1 million of the sale price, four percent (4%) of the second $1 million, three percent (3%) of the third $1 million, two percent (2%) of the fourth $1 million, and one percent (1%) of any amount greater than $4 million]. The total gross sales price shall include noncompetition agreements, consulting agreements, payments over time, promissory notes or their equivalents, but shall exclude tax benefits or efficiencies. In the case of payments over time or promissory notes, the full commission shall be paid at the time of closing on any of the Newspaper assets. In addition, you agree to reimburse us for our reasonable expenses as incurred for travel undertaken at your request, regardless of whether a transaction occurs.

Any compensation to be paid to us shall be subject to approval by the United States Bankruptcy Court for the District of Delaware.

If the preceding reflects your understanding of our agreement and meets with your approval, please signify so by signing the attached copy of this letter and returning it to us, whereupon this letter shall constitute a binding agreement between us.

Very truly yours,

DIRKS, VAN ESSEN & MURRAY

By _____
Philip W. Murray
Executive Vice President

ACCEPTED AND AGREED TO THIS 17th DAY OF September, 2009.

FREEDOM COMMUNICATIONS, INC.

By _____
~~Burl Osborne~~
Mark A. McEachen

Its _____