IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------- x
In re:                                    : Chapter 11
                                          :
FREEDOM COMMUNICATIONS HOLDINGS,          : Case No. 09-13046 (BLS)
INC., et al.,                             :
                                          : Jointly Administered
         Debtors.[1]                      :
                                          : Hearing Date: October 5, 2009 at 2:00 p.m. (ET)
                                          : Objection Deadline: September 28, 2009 at 4:00 p.m. (ET)
---------------------------------------------------------------- x

## APPLICATION OF DEBTORS FOR ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF HOULIHAN LOKEY HOWARD & ZUKIN CAPITAL, INC. AS INVESTMENT BANKERS AND FINANCIAL ADVISORS PURSUANT TO 11 U.S.C. §§ 327(a), 328(a) AND 1107, FED. R. BANKR. P. 2014(A) AND DEL. BANKR. L.R. 2014-1, *NUNC PRO TUNC* TO THE PETITION DATE

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors") hereby apply to the Court (the "Application") for entry of an order, substantially in the form attached hereto as <u>Exhibit A</u>, authorizing the Debtors to employ and retain Houlihan Lokey Howard & Zukin Capital, Inc. ("Houlihan Lokey"), as their investment bankers and financial advisors, *nunc pro tunc* to September 1, 2009, (the "Petition Date"), pursuant to sections 327(a), and 328(a) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2014(a) of the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: Freedom Communications Holdings, Inc. (2814); Freedom Communications, Inc. (0750); Freedom Broadcasting, Inc. (0025); Freedom Broadcasting of Florida, Inc. (6581); Freedom Broadcasting of Florida Licensee, L.L.C. (1198); Freedom Broadcasting of Michigan, Inc. (6110); Freedom Broadcasting of Michigan Licensee, L.L.C. (1122); Freedom Broadcasting of New York, Inc. (6522); Freedom Broadcasting of New York Licensee, L.L.C. (9356); Freedom Broadcasting of Oregon, Inc. (7291); Freedom Broadcasting of Oregon Licensee, L.L.C. (9295); Freedom Broadcasting of Southern New England, Inc. (7274); Freedom Broadcasting of Southern New England Licensee, L.L.C. (1177); Freedom Broadcasting of Texas, Inc. (2093); Freedom Broadcasting of Texas Licensee, L.L.C. (1147); Freedom Broadcasting of Tennessee, Inc. (7961); Freedom Broadcasting of Tennessee Licensee, L.L.C. (9430); Freedom Magazines, Inc. (0328); Freedom Metro Information, Inc. (1604); Freedom Newspapers, Inc. (3240); Orange County Register Communications, Inc. (7980); OCR Community Publications, Inc. (9752); OCR Information Marketing, Inc. (7983); Appeal-Democrat, Inc. (4121); Florida Freedom Newspapers, Inc. (4227); Freedom Arizona Information, Inc. (5796); Freedom Colorado Information, Inc. (7806); Freedom Eastern North Carolina Communications, Inc. (5563); Freedom Newspapers of Illinois, Inc. (2222); Freedom Newspapers of Southwestern Arizona, Inc. (5797); Freedom Shelby Star, Inc. (8425); Illinois Freedom Newspapers, Inc. (8308); Missouri Freedom Newspapers, Inc. (8310); Odessa American (7714); The Times-News Publishing Company (0230); Victor Valley Publishing Company (6082); Daily Press (3610); Freedom Newspaper Acquisitions, Inc. (4322); The Clovis News-Journal (5820); Freedom Newspapers of New Mexico L.L.C. (5360); Gaston Gazette LLP (4885); Lima News (6918); Porterville Recorder Company (7735); Seymour Tribune Company (7550); Victorville Publishing Company (7617); Freedom Newspapers (7766); The Creative Spot, L.L.C. (2420); Freedom Interactive Newspapers, Inc. (9343); Freedom Interactive Newspapers of Texas, Inc. (8187); Freedom Services, Inc. (3125). The address for Freedom Communications Holdings, Inc. and certain other Debtors is 17666 Fitch, Irvine, California 92614.

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2014-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"). In support of this Application, the Debtors submit the Declaration of Eric Winthrop, a Managing Director of Houlihan Lokey (the "Winthrop Declaration"), a copy of which is attached hereto as <u>Exhibit B</u>. In further support of this Application, the Debtors respectfully submit as follows:

## JURISDICTION

1. This Court has jurisdiction to consider this Application under 28 U.S.C. §§ 157 and 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b). Venue of these cases and this Application in this district is proper in this Court under 28 U.S.C. §§ 1408 and 1409. The predicates for the relief requested herein are Bankruptcy Code sections 327(a), 328(a), and 1107, Bankruptcy Rule 2014(a), and Local Rule 2014-1.

## BACKGROUND

2. On the Petition Date, the Debtors filed voluntary petitions in this Court for relief under chapter 11 of the Bankruptcy Code. The Debtors continue to manage and operate their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108. No trustee or examiner has been requested in these chapter 11 cases. On September 10, 2009, the Office of the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors for these cases (the "Committee").

3. The Debtors in these cases consist of 50 entities within a corporate family led by parent company Freedom Communications Holdings, Inc. ("Freedom Holdings"). Freedom Holdings is the direct owner of Freedom Communications, Inc. ("Freedom Communications"). Freedom Communications is, in turn, the direct or indirect owner of the other 48 Debtors, as well as six non-Debtor affiliates.

4.  Together, the Debtors operate a media business in two primary industry segments: newspaper publishing and broadcast television. In addition, the Debtors operate an interactive business which offers website complements, as well as digital and mobile products, to their newspaper and broadcast properties. Five of the non-Debtor affiliates operate as charitable organizations within the communities served by certain of the Debtors' newspapers, and the other non-Debtor affiliate is an entity organized under the laws of Mexico that has ceased its business operations.

5.  The Debtors' operations are headquartered in Orange County, California and extend to 15 states within the United States, utilizing the services of in excess of 8,200 employees and independent contractors. Their newspaper publishing segment produces approximately 90 daily and weekly publications, including 30 daily newspapers, as well as ancillary magazines and other specialty publications. They operate eight television stations within their broadcast television segment, including five CBS affiliates, two ABC affiliates, and one CW affiliate.

6.  The Debtors have consolidated liabilities of approximately $1.077 billion (calculated as of the month ended July 31, 2009). Their primary financial obligation arises under a secured credit agreement dated May 18, 2004, as amended, and is in the approximate amount of $770.6 million (excluding contingent letter of credit obligations). The Debtors are either obligors or guarantors, and have pledged substantially all of their assets to secure the indebtedness owing, under the credit agreement. In addition, the Debtors have other liabilities of approximately $306.4 million. Moreover, as described below, the Debtors were obligated under a contingent class action settlement in the amount of approximately $28.9 million. As a result of the commencement of these chapter 11 cases, the settlement terminated, and the Debtors

anticipate that the claimants will assert renewed claims. Any such claims would be in addition to the consolidated liabilities of approximately $1.077 billion.

7. The Debtors' financial condition has been deteriorating over the last several years. They have suffered from unprecedented challenges in the economy generally and the media industry specifically that have impacted their primary source of revenue: advertising. Traditionally, advertising revenues decline markedly during national, regional, and local economic downturns, like those experienced since the second half of 2008. For example, retail advertising has decreased with declines in the retail market, and classified advertising has suffered from unemployment and declines in the real estate and auto sectors. Moreover, competition from internet based alternatives, particularly in the classified employment advertising category, has caused significant erosion in traditional print media advertising revenues. In addition, recent high newsprint prices have taken their toll on the Debtors' otherwise reduced revenues.

8. As a result of their deteriorating financial condition, as of September 30, 2008, the Debtors had failed to satisfy the financial covenants of their secured credit agreement. The secured lenders issued a notice of default on October 16, 2008. The defaults continued through April 29, 2009, when the lenders agreed, among other things, to grant a temporary waiver of the defaults through December 31, 2009, unless earlier terminated. Thus, prior to the Petition Date, the Debtors faced the prospect of lengthy negotiations with their secured lenders that, even if resulting in an out-of-court restructuring of the obligations under the credit agreement, were not certain to remedy all of the issues impacting their financial results.

9. At the same time, the Debtors faced the imminent loss of approximately $28.9 million to a contingent litigation settlement involving the class action claims of certain

newspaper carriers for *The Orange County Register*. As part of the settlement, the Debtors funded an escrow account under the condition that the funds would not be disbursed to the claimants until September 14, 2009, and the funds would be returned to the Debtors in the event of a chapter 11 filing before that date. The Debtors recognized that, if they filed for chapter 11 relief after the funds were disbursed, they would have the right to seek to recover the funds as a preferential transfer, but the process of actually recovering the funds would be time-consuming and expensive.

10. Giving due consideration to the interests of all creditors, the Debtors determined that chapter 11 cases should be commenced before September 14, 2009. As a result, on the Petition Date, the Debtors commenced these chapter 11 cases. The Debtors intend to utilize the tools available to them under chapter 11 to improve their balance sheet and strengthen their businesses for the benefit of creditors, customers, employees, and the communities in which the Debtors operate.

**RELIEF REQUESTED**

11. By this Application, the Debtors seek to retain and employ Houlihan Lokey as their investment bankers and financial advisors in these chapter 11 cases, *nunc pro tunc* to the Petition Date, under the terms and conditions of the engagement agreement dated as of March 13, 2009 by and between Houlihan Lokey and the Debtors (such agreement as amended by the Agreement dated May 9, 2009, and together with all modifications, renewals thereof and all documents ancillary thereto or otherwise entered into in connection therewith, are collectively referred to herein as the "Agreement"), a copy of which is annexed to the Winthrop Declaration as Appendix 1.

# SERVICES TO BE PROVIDED[1]

12. Houlihan Lokey will assist in the evaluation of strategic alternatives and render investment banking and financial advisory services to the Debtors in connection with these chapter 11 cases including, without limitation:

   a. assisting the Debtor in the development, preparation and distribution of selected information, documents and other materials in an effort to create interest in and to consummate any Transaction(s), including, if appropriate, advising the Debtor in the preparation of an offering memorandum;

   b. soliciting and evaluating indications of interest and proposals regarding any Transaction(s) from current and/or potential lenders, equity investors, acquirers and/or strategic partners (collectively, "Investors");

   c. assisting the Debtor with the development, structuring, negotiation and implementation of any Transaction(s), including, among other things, assisting the Debtor with due diligence investigations and participating as a representative of the Debtor in negotiations with creditors and other parties involved in any Transaction(s);

   d. assisting the Debtor in valuing the Debtor and/or, as appropriate, valuing the Debtors assets or operations, provided that any real estate or fixed asset appraisals will be undertaken by outside appraisers, separately retained and compensated by the Debtor;

   e. providing expert advice and testimony regarding financial matters related to any Transaction(s); and

   f. advising and attending meetings of the Debtors' Board of Directors, creditor groups, official constituencies and other interested parties, as the Debtor determines to be necessary or desirable.

---

[1] Capitalized terms used in this summary but not otherwise defined herein shall have the meanings set forth in the Agreement. This summary is solely for the benefit of the Court and parties in interest. To the extent that this summary and the terms of the Agreement are inconsistent, the terms of the Agreement shall control.

13. In addition, Houlihan Lokey will provide any additional investment banking and financial services as the Debtors may request from time to time. For clarification purposes only, Houlihan Lokey will not act as the Company's exclusive sale agent during the term of the Agreement.[2] The Agreement also contains standard indemnification language with respect to Houlihan Lokey's services. Accordingly, as part of this Application, the Debtors request that the Court approve the indemnification provisions as set forth therein.

## PROFESSIONAL COMPENSATION[3]

14. Houlihan Lokey intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with the Debtors' chapter 11 cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and any other applicable procedures and orders of the Court and consistent with the proposed compensation set forth in the Agreement (the "Fee Structure").[4] Further, because the Debtors are seeking to retain Houlihan Lokey under Bankruptcy Code section 328(a), the Debtors believe that Houlihan Lokey's compensation should not be subject to any additional standard of review under Bankruptcy Code section 330.

15. In summary, the Fee Structure provides for the following compensation to Houlihan Lokey:

---

[2] This clarification is agreed to govern over the Agreement.

[3] Capitalized terms used in this summary but not otherwise defined herein shall have the meanings set forth in the Agreement. This summary is solely for the benefit of the Court and parties in interest. To the extent that this summary and the terms of the Agreement are inconsistent, the terms of the Agreement shall control.

[4] The Debtors are seeking to establish procedures for interim compensation of their professionals.

a. Monthly Fees: In addition to the other fees provided for herein, starting on the Effective Date, and on every monthly anniversary of the Effective Date during the term of this Agreement, the Company shall pay Houlihan Lokey in advance, without notice or invoice, a nonrefundable cash fee of $200,000 (the "Monthly Fee"). Each Monthly Fee shall be earned upon Houlihan Lokey's receipt thereof in consideration of Houlihan Lokey accepting this engagement and performing services as described herein. Fifty percent of the Monthly Fees earned and paid following the six month anniversary of the Effective Date shall be credited to any Deferred Fees payable hereunder;

b. Deferred Transaction Fee. Upon the consummation of a Transaction (as defined herein), Houlihan Lokey shall earn and the Company shall promptly pay a cash fee equal to $6,000,000 (the "Phase II Deferred Fee"); and

c. Expenses: Reasonable out of pocket expenses incurred in connection with the services provided.

16. The Fee Structure is consistent with and typical of compensation arrangements entered into by Houlihan Lokey and other comparable firms in connection with the rendering of similar services under similar circumstances. In determining the Fee Structure to be paid to Houlihan Lokey and the reasonableness of such compensation, the Debtors compared Houlihan Lokey's fee proposal to other proposals received by the Debtors in the investment banking selection process. After such comparison, Houlihan Lokey and the Debtors believe that the Fee Structure is in fact reasonable, market-based and designed to compensate fairly Houlihan Lokey for its work and to cover fixed and routine overhead expenses.

17. Houlihan Lokey's strategic and financial expertise as well as its capital markets knowledge, financing skills, restructuring capabilities and mergers and acquisitions expertise, some or all of which may be required by the Debtors during the term of Houlihan Lokey's engagement, were all important factors in determining the Fee Structure. The Debtors believe that the ultimate benefit of Houlihan Lokey's services hereunder cannot be measured by reference to the number of hours to be expended by Houlihan Lokey's professionals in the

performance of such services. Indeed, the Debtors and Houlihan Lokey have agreed upon the Fee Structure in anticipation that a substantial commitment of professional time and effort will be required of Houlihan Lokey and its professionals in connection with these chapter 11 cases, and in light of the fact that (a) such commitment may foreclose other opportunities for Houlihan Lokey and (b) the actual time and commitment required of Houlihan Lokey and its professionals to perform its services under the Agreement may vary substantially from week to week and month to month, creating "peak load" issues for Houlihan Lokey.

18. Houlihan Lokey will maintain records in support of any actual and necessary costs and expenses incurred in connection with the rendering of its services in these chapter 11 cases. Although Houlihan Lokey does not charge for its services on an hourly basis, Houlihan Lokey will nonetheless maintain records (in summary format) of time spent by its professionals in connection with the rendering of services for the Debtors by category and nature of the services rendered and reasonably detailed descriptions of those services provided on behalf of the Debtors, the approximate time expended in providing those services and the individuals who provided professional services on behalf of the Debtors and will present such records to the Court.

19. Prior to the Petition Date, pursuant to the terms of the Agreement, Houlihan Lokey received (i) $1,200,000, as payment for monthly fees[5] and (ii) $54,683.51 reimbursement for out of pocket expenses incurred. As of the Petition Date, Houlihan Lokey did not hold a prepetition claim against the Debtors for services rendered.

---

[5] As part of the $1,200,000 received in monthly fees, Houlihan Lokey has received a $400,000 retainer payment equal to two monthly payments.

# BASIS FOR RELIEF

A.  **Section 328 of the Bankruptcy Code Permits the Employment and Retention of Houlihan Lokey on Terms Substantially Similar to Those in the Agreement.**

20. The Debtors seek approval of the Agreement and the Fee Structure (as defined below) pursuant to Bankruptcy Code section 328(a), which provides, in relevant part, that the Debtors "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a). Accordingly, section 328 permits the compensation of professionals, including investment bankers and financial advisors, on more flexible terms that reflect the nature of their services and market conditions. As the United States Court of Appeals for the Fifth Circuit recognized in Donaldson Lufkin & Jenrette Sec. Corp. v. Nat'l Gypsum (In re Nat'l Gypsum Co.):

> Prior to 1978 the most able professionals were often unwilling to work for bankruptcy estates where their compensation would be subject to the uncertainties of what a judge thought the work was worth after it had been done. That uncertainty continues under the present § 330 of the Bankruptcy Code, which provides that the court award to professional consultants "reasonable compensation" based on relevant factors of time and comparable costs, etc. Under present § 328 the professional may avoid that uncertainty by obtaining court approval of compensation agreed to with the trustee (or debtor or committee).

123 F.3d 861, 862 (5th Cir. 1997) (internal citations omitted).

21. Furthermore, under the recently enacted Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, certain modifications were made to section 328(a), which now provides as follows:

> The trustee, or a committee appointed under section 1102 of this title, with the court's approval, may employ or authorize the employment of a

> professional person under section 327 or 1103 of this title, as the case may be, on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, <u>on a fixed percentage fee basis, or on a contingent fee basis</u>.

See 11 U.S.C. § 328(a) (emphasis added). Section 328(a), as amended, now makes it clear that debtors may retain, subject to bankruptcy court approval, a professional on a fixed-fee basis such as the Fee Structure (as defined below) with Houlihan Lokey as proposed by the Debtors herein.

22. As set forth above, notwithstanding approval of the Agreement under section 328 of the Bankruptcy Code, Houlihan Lokey intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with these chapter 11 cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and any other applicable procedures and orders of the Court and consistent with the proposed compensation set forth in the Agreement.

23. Further, consistent with its ordinary practice and the practice of financial advisors and investment bankers in other chapter 11 cases whose fee arrangements are typically not hours-based, Houlihan Lokey does not ordinarily maintain contemporaneous time records or provide or conform to a schedule of hourly rates for its professionals. As Houlihan Lokey's compensation will be calculated and paid based on certain transaction fees, Houlihan Lokey requests that it not be required to file time records in accordance with the United States Trustee Guidelines. Rather, in its fee applications filed with the Court, Houlihan Lokey would present descriptions of those services provided on behalf of the Debtors, the approximate time expended in providing those services and the individuals who provided professional services on behalf of the Debtors.

24. The Debtors believe that the Fee Structure (as defined below) reflects appropriately the nature and scope of services to be provided by Houlihan Lokey, Houlihan Lokey's substantial experience with respect to investment banking and financial advisory services and the fee structures typically utilized by Houlihan Lokey and other leading investment banks and financial advisors that do not bill their clients on an hourly basis.

25. Indeed, similar fixed and contingency fee arrangements in other large chapter 11 cases have been routinely approved and implemented by courts in this circuit. See, e.g., In re Aventine Renewable Energy Holdings, Inc., Case No. 09-11214 (KG) (Bankr. D. Del. Apr. 7, 2009); In re FLYi, Inc., No. 05-20011 (MFW) (Bankr. D. Del. Jan. 17, 2006) (order authorizing retention of Miller Buckfire & Co., LLC on substantially the same terms); In re Foamex Int'l, Inc., No. 05-12685 (PJW) (Bankr. D. Del. Oct. 17, 2005) (order authorizing retention of Miller Buckfire & Co., LLC on substantially the same terms); In re Oakwood Homes Corp., No. 02-13396 (PJW) (Bankr. D. Del. July 21, 2003) (order authorizing retention of Miller Buckfire & Co., LLC on similar terms); In re Kaiser Aluminum Corp., No. 02-10429 (JKF) (Bankr. D. Del. Mar. 19, 2002) (authorizing retention of Lazard Freres & Co. LLC and subjecting compensation to same standard of review); In re Trans World Airlines, Inc., No. 01-0056 (PJW) (Bankr. D. Del. Jan. 26, 2001) (authorizing retention of Rothschild, Inc., as financial advisors for debtors, under sections 327(a) and 328(a) of the Bankruptcy Code); In re Covad Communications Group, Inc., No. 01-10167 (JJF) (Bankr. D. Del. Nov. 21, 2001) (authorizing retention of Houlihan Lokey Howard & Zukin Capital, Inc. with compensation subject to standard of review set forth in section 328(a)); In re Harnischfeger Indus., No. 99-02171 (PJW) (Bankr. D. Del. Feb. 8, 2000) (authorizing retention of The Blackstone Group L.P. as investment bankers to debtors).

26. The terms and conditions of the Agreement, including the provision relating to indemnification, were negotiated by the Debtors and Houlihan Lokey at arm's-length and in good faith. In light of the foregoing, and given the numerous issues that Houlihan Lokey may be required to address in the performance of its services there under, Houlihan Lokey's commitment to the variable level of time and effort necessary to address all such issues as they arise and the market prices for Houlihan Lokey's services for engagements of this nature, the Debtors believe that the terms and conditions of the Agreement are fair, reasonable and market-based under the standards set forth in Bankruptcy Code section 328(a).

27. The Agreement provides for indemnity of Houlihan Lokey by the Debtors. Notwithstanding the indemnification provisions set forth in the Agreement, such indemnity is modified, to the extent necessary, by the proposed order on this Application as follows (the "Modified Indemnification Provisions"):

    a.    subject to the provisions of subparagraph (c), infra, the Debtors are authorized to indemnify, and shall indemnify, Houlihan Lokey in accordance with the Agreement for any claim arising from, related to, or in connection with the services provided for in the Agreement, but not for any claim arising from, related to, or in connection with Houlihan Lokey's postpetition performance of any other services unless such postpetition services and indemnification therefore are approved by the Bankruptcy Court;

    b.    notwithstanding any provisions of the Agreement to the contrary, the Debtors shall have no obligation to indemnify Houlihan Lokey or provide contribution or reimbursement to Houlihan Lokey (i) for any claim or expense that is judicially determined (the determination having become final) to have arisen from Houlihan Lokey's bad faith, self dealing, breach of fiduciary duty (if any), gross negligence, or willful misconduct, (ii) for a contractual dispute in which the Debtors allege the breach of Houlihan Lokey's contractual obligations unless the Court determines that indemnification, contribution, or reimbursement would not be prohibited by In re United Artists Theatre Company, et al., 315 F.3d 217 (3d Cir. 2003), or (iii) for any claim or expense that is settled prior to a judicial determination as to the exclusions set forth in clauses (i) and (ii) above, but determined by the Court, after notice and a hearing pursuant to subparagraph (c) infra, to be a claim or expense for which Houlihan Lokey

should not receive indemnity, contribution or reimbursement under the terms of the Agreement, as modified by this Order;

    c.    if, before the earlier of (i) the entry of an order confirming a chapter 11 plan in these cases (that order having become a final order no longer subject to appeal), and (ii) the entry of an order closing these chapter 11 cases, Houlihan Lokey believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution and/or reimbursement obligations under the Agreement, including without limitation the advancement of defense costs, Houlihan Lokey must file an application therefore in this Court, and the Debtors may not pay any such amounts to Houlihan Lokey before the entry of an order by this Court approving such payment. This subparagraph (c) is intended only to specify the period during which the Court shall have jurisdiction over any request for indemnification, contribution or reimbursement by Houlihan Lokey and not a provision limiting the duration of the Debtors' obligation to indemnify Houlihan Lokey; and

    d.    any limitation on liability pursuant to the terms of the Agreement shall be eliminated.

28.    The Debtors and Houlihan Lokey believe that the Modified Indemnification Provisions are customary and reasonable for financial advisory and investment banking engagements, both out-of-court and in chapter 11 proceedings. See, e.g., In re Foamex Int'l Inc., Case No. 05-12685 (PJW) (Bankr. D. Del. Oct. 18, 2005) (order authorizing retention of Miller Buckfire on similar terms); In re Comdisco, Inc., Case No. 02-C-1174 (N.D. Ill. Sep. 23, 2002) (affirming order authorizing indemnification of Lazard Freres & Co. LLC and Rothschild, Inc. by debtors and official committee of unsecured creditors); In re United Artists Theatre Co., Case No. 00-3514 (Bankr. D. Del. Dec. 1, 2000) (order authorizing indemnification of Houlihan Lokey by debtors); In re Joan & David Halpern, Inc., 248 B.R. 43 (Bankr. S.D.N.Y. 2000), aff'd, 2000 WL 1800690 (S.D.N.Y. Dec. 6, 2000). The modified Indemnification Provisions are similar to other indemnification provisions that have been approved by bankruptcy courts in this and other districts. See, e.g., In re Burlington Indus., Inc., Case No. 01-11282 (RJN) (Bankr. D. Del. May 21, 2003) (order authorizing retention of Miller Buckfire on similar terms); In re PC

Landing Corp., Case No. 02-12086 (PJW) (Bankr. D. Del. Oct. 10, 2002) (same); In re Metrocall, Inc., Case No. 02-11579 (RB) (Bankr. D. Del. Jul. 8, 2002) (order authorizing retention of Lazard Freres & Co. LLC under similar terms); In re Kaiser Aluminum Corp., Case No. 02-10429 (JKF) (Bankr. D. Del. Mar. 19, 2002) (same); In re W.R. Grace & Co., Case No. 01-01139 (JJF) (Bankr. D. Del. Jun. 22, 2001) (order authorizing retention of Blackstone Group under terms of engagement letter, including, among other things, Indemnification Provisions similar to the Indemnification Provisions).

**B.    The Retention of Houlihan Lokey Is Critical to the Debtors' Success.**

29.    Denial of the relief requested herein will deprive the Debtors the assistance of uniquely qualified investment banking and financial advisors and, certainly, would effect an unjust disadvantage to the Debtors and all parties in interest. Indeed, the Debtors would be forced to engage new investment bankers and financial advisors who lack such a thorough understanding of the Debtors' businesses and the restructuring initiatives that have been implemented over the course of the last few months and which will continue through the pendency of these chapter 11 cases. The result would be the commitment of significant resources to get a substitute up to speed given the steep learning curve involved and, further, comparable investment bankers and financial advisors would charge an equivalent level of fees. Accordingly, the Debtors respectfully submit that the services provided by Houlihan Lokey are critical to the Debtors' estate and request that the Court approve the terms and conditions of the Agreement in substantially the form attached hereto.

## HOULIHAN LOKEY'S QUALIFICATIONS

30.    Established in 1970, Houlihan Lokey is an international investment banking and financial advisory firm, with 14 offices worldwide and more than 800 employees. Houlihan Lokey provides corporate finance and financial advisory services, as well as execution

capabilities, in a variety of areas, including financial restructuring. In 2008, Houlihan Lokey ranked as the No. 1 M&A Advisor for United States transactions under $2 billion, according to Thomson Reuters. The firm has been the No. 1 provider of M&A fairness opinions and has one of the largest worldwide financial restructuring practices of any investment bank. Houlihan Lokey annually serves more than 1,000 clients ranging from closely held companies to Global 500 corporations.

31. Through its Financial Restructuring Group, Houlihan Lokey is one of the leading advisors and investment bankers to troubled companies, both inside and outside of bankruptcy, as well as to their bondholders, banks, other secured and unsecured creditors, creditors' committees, acquirers, equity sponsors and other parties- in- interest involved with financially challenged companies. Houlihan Lokey's Financial Restructuring Group has over 150 professionals worldwide dedicated to providing restructuring and other financial services to distressed companies. Houlihan Lokey's Financial Restructuring Group has advised on over 500 transactions, valued in excess of $1.25 trillion, over the past ten years.

32. Houlihan Lokey has been employed as investment bankers and/or financial advisers to the debtors in a number of large restructuring situations, including the following chapter 11 cases: In re Aventine Renewable Energy Holdings, Inc., Case No. 09-11214 (KG) (Bankr. D. Del. Apr. 7, 2009); In re Foamex International Inc., Case No. 09-10560 (KJC) (Bankr. D. Del. Feb. 18, 2009); In re Buffets Holdings, Inc., Case No. 08-10141 (MFW) (Bankr. D. Del. Mar. 12, 2008); In re Granite Broadcasting, Corp., Case No. 06-12984 (ALG) (Bankr. S.D.N.Y. Dec. 12, 2006); In re McLeodUSA, Inc., Case No. 05-63230 (JHS) (Bankr. N.D. Ill. Oct. 28, 2005); In re XO Communications, Inc., Case No. 02-12947 (AJG) (Bankr. S.D.N.Y. June 17, 2002); In re Tokheim Corporation, Case No. 02-13437 (KJC) (D. Del. Dec.12, 2002); In

re Covad Communications Group, Inc., Case No. 01-10167 (PJW) (Bankr. D. Del. Aug. 20, 2001); In re Ameriserve Food Dist., Inc., Case No. 00-0358 (PJW) (Bankr. D. Del. Feb. 11, 2000); In re Stage Stores Inc., Case No. 00-35078 (WWS) (Bankr. S.D. Tex. June 9, 2002); In re Purina Mills. Inc., No. 99-3938 (SLR) (D. Del. Oct. 29, 1999). In addition, Houlihan Lokey has been involved in restructuring matters while representing official creditors committees including: In re Smurfit-Stone Container Corp., Case No. 09-10235 (BLS) (Bankr. D. Del. Jan. 29, 2009); In re WCI Communities Inc., Case No. 08-11643 (KJC) (Bankr. D. Del. Aug. 4, 2008); In re SemGroup LP, Case No. 08-11525 (BLS) (Bankr. D. Del. July 22, 2008); In re Lehman Brothers Holdings Inc., Case No. 08-13555 (JMP) (Bankr. S.D.N.Y. Nov. 5, 2008 and Dec. 17, 2008); In re Delta Air Lines Inc., Case No. 05-17923 (PCB) (Bankr. S.D.N.Y. Dec. 05, 2005); In re Refco Inc., Case No. 05-60006 (RDD) (Bankr. S.D.N.Y. Nov. 23, 2005); In re Solutia, Inc., Case No. 03-17949 (PCB) (Bankr. S.D.N.Y. Dec. 17, 2003); In re Worldcom, Inc., Case No. 02-13533 (AJG) (Bankr. S.D.N.Y. Oct. 7, 2002); In re Enron Corp., Case No. 01-16034 (AJG) (Bankr. S.D.N.Y. Jan. 1, 2002).

33. As a result of the prepetition work performed on behalf of the Debtors, Houlihan Lokey has acquired knowledge of the Debtors and their businesses and is now familiar with the Debtors' financial affairs, debt structure, operations and related matters. Specifically, Houlihan Lokey's prepetition work on behalf of the Debtors has included, without limitation: (a) advising the Debtors on strategic alternatives including various financing and restructuring options; (b) preparing a comprehensive capital structure analysis including a review of all current loan documentation, lease agreements and other relevant financial obligations; (c) reviewing current and projected financial results including an assessment of the Debtors' liquidity and projected covenant compliance; (d) preparing a comprehensive strategic assessment including possible

near and intermediate term execution strategies; (e) advising and attending meetings of the Debtors' Boards of Directors, creditor groups, official constituencies and other interested parties, as the Debtors and Houlihan Lokey determined to be necessary or desirable; (f) assisting the Debtors with the development, structuring, negotiation and implementation of any transaction(s) including the proposed restructuring of the Debtors; including participating as a representative of the Debtors in negotiations with creditors and other parties involved in any transaction(s); and (g) advising and negotiating on behalf of the Debtors with various constituents with respect to the proposed restructuring of the Debtors.

34. An experienced investment bank and financial advisor such as Houlihan Lokey fulfills a critical need that complements the services offered by the Debtors' other restructuring professionals. The Debtors believe they require the services of a capable and experienced investment bank and financial advisory firm such as Houlihan Lokey because, among other reasons, Houlihan Lokey's resources and capabilities, together with its prepetition experience advising the Debtors, are crucial to the Debtors' success in these chapter 11 cases.

## NO DUPLICATION OF SERVICES

35. The Debtors intend that the services of Houlihan Lokey will complement, and not duplicate, the services to be rendered by any other professional retained in these chapter 11 cases. Pursuant to the Agreement, Houlihan Lokey understands that the Debtors have retained and may retain additional professionals during the term of the engagement and agrees to work cooperatively with such professionals to integrate any respective work conducted by the professionals on behalf of the Debtors.

## HOULIHAN LOKEY'S DISINTERESTEDNESS

36. Houlihan Lokey has reviewed its electronic database and, to the best of its knowledge and except to the extent disclosed in the Winthrop Declaration, Houlihan Lokey (a) is

a "disinterested person" within the meaning of Bankruptcy Code section 101(14) as modified by Bankruptcy Code section 1107(b), (b) does not hold or represent an interest adverse to the Debtors' estates and (c) has no connection to the Debtors, their creditors or their related parties. Houlihan Lokey will periodically review its files during the pendency of these chapter 11 cases to ensure that no conflicts or other disqualifying circumstances exist or arise. To the extent that Houlihan Lokey discovers any new relevant facts or relationships bearing on the matters described herein during the period of Houlihan Lokey's retention, Houlihan Lokey will use reasonable efforts to file promptly a supplemental declaration.

## NOTICE

37. Notice of the filing of this Motion has been provided to: (a) the U.S. Trustee; (b) counsel to the Committee; (c) counsel to the agent for the Debtors' prepetition secured bank group; and (d) all parties who have requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested, the Debtors submits that no further notice is required or needed under the circumstances.

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form annexed hereto, granting the relief requested in the Application and such other and further relief as may be just and proper.

September 17, 2009

FREEDOM COMMUNICATIONS HOLDINGS, INC.

By: /s/ Mark A. McEachen
Name: Mark A. McEachen
Title: Senior Vice President and Chief Financial Officer