**Exhibit B**

**Winthrop Declaration**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

----------------------------------------------------------- x

In re:                              :      Chapter 11

                                     :

FREEDOM COMMUNICATIONS HOLDINGS, :     Case No. 09-13046 (BLS)
INC., et al.,                          :

                                     :

             Debtors.[1]              :      Jointly Administered

----------------------------------------------------------- X

## DECLARATION OF ERIC WINTHROP IN SUPPORT OF APPLICATION OF DEBTORS FOR ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF HOULIHAN LOKEY HOWARD & ZUKIN CAPITAL, INC. AS INVESTMENT BANKER AND FINANCIAL ADVISOR PURSUANT TO 11 U.S.C. §§ 327(a) AND 328(a) AND 1107, FED. R. BANKR. P. 2014(A) AND DEL. BANKR. L.R. 2014-1, *NUNC PRO TUNC* TO THE PETITION DATE

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: Freedom Communications Holdings, Inc. (2814); Freedom Communications, Inc. (0750); Freedom Broadcasting, Inc. (0025); Freedom Broadcasting of Florida, Inc. (6581); Freedom Broadcasting of Florida Licensee, L.L.C. (1198); Freedom Broadcasting of Michigan, Inc. (6110); Freedom Broadcasting of Michigan Licensee, L.L.C. (1122); Freedom Broadcasting of New York, Inc. (6522); Freedom Broadcasting of New York Licensee, L.L.C. (9356); Freedom Broadcasting of Oregon, Inc. (7291); Freedom Broadcasting of Oregon Licensee, L.L.C. (9295); Freedom Broadcasting of Southern New England, Inc. (7274); Freedom Broadcasting of Southern New England Licensee, L.L.C. (1177); Freedom Broadcasting of Texas, Inc. (2093); Freedom Broadcasting of Texas Licensee, L.L.C. (1147); Freedom Broadcasting of Tennessee, Inc. (7961); Freedom Broadcasting of Tennessee Licensee, L.L.C. (9430); Freedom Magazines, Inc. (0328); Freedom Metro Information, Inc. (1604); Freedom Newspapers, Inc. (3240); Orange County Register Communications, Inc. (7980); OCR Community Publications, Inc. (9752); OCR Information Marketing, Inc. (7983); Appeal-Democrat, Inc. (4121); Florida Freedom Newspapers, Inc. (4227); Freedom Arizona Information, Inc. (5796); Freedom Colorado Information, Inc. (7806); Freedom Eastern North Carolina Communications, Inc. (5563); Freedom Newspapers of Illinois, Inc. (2222); Freedom Newspapers of Southwestern Arizona, Inc. (5797); Freedom Shelby Star, Inc. (8425); Illinois Freedom Newspapers, Inc. (8308); Missouri Freedom Newspapers, Inc. (8310); Odessa American (7714); The Times-News Publishing Company (0230); Victor Valley Publishing Company (6082); Daily Press (3610); Freedom Newspaper Acquisitions, Inc. (4322); The Clovis News-Journal (5820); Freedom Newspapers of New Mexico L.L.C. (5360); Gaston Gazette LLP (4885); Lima News (6918); Porterville Recorder Company (7735); Seymour Tribune Company (7550); Victorville Publishing Company (7617); Freedom Newspapers (7766); The Creative Spot, L.L.C. (2420); Freedom Interactive Newspapers, Inc. (9343); Freedom Interactive Newspapers of Texas, Inc. (8187); Freedom Services, Inc. (3125). The address for Freedom Communications Holdings, Inc. and certain other Debtors is 17666 Fitch, Irvine, California 92614.

I, Eric Winthrop, state the following under penalty of perjury:

1. I am a Managing Director of Houlihan Lokey Howard & Zukin Capital, Inc. ("Houlihan Lokey"). Houlihan Lokey maintains offices at 1930 Century Park West, Los Angeles, CA 90067.

2. I am authorized to make this declaration (the "Declaration") in support of the application (the "Application")[1] to retain Houlihan Lokey as investment banker and financial advisor to the debtors and debtor-in-possession (collectively, the "Debtors"), *nunc pro tunc* to September 1, 2009 (the "Petition Date"), pursuant to sections 327(a), 328(a) and 1107 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 2014-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

3. The facts set forth in this Declaration are personally known to me and, if called as a witness, I could and would testify thereto.

4. Established in 1970, Houlihan Lokey is an international investment banking/ financial advisory firm, with 14 offices worldwide and more than 800 employees. Houlihan Lokey provides corporate finance and financial advisory services, as well as execution capabilities, in a variety of areas, including financial restructuring. In 2008 Houlihan Lokey ranked as the No. 1 M&A Advisor for U.S. transactions under $2 billion, according to Thomson Reuters. The firm is one of the leading providers of M&A fairness opinions and has one of the largest worldwide financial restructuring practices of any investment bank. Houlihan Lokey

annually serves more than 1,000 clients ranging from closely held companies to Global 500 corporations.

5.     Through its Financial Restructuring Group, Houlihan Lokey is one of the leading advisors and investment bankers to troubled companies, both inside and outside of bankruptcy, as well as to their bondholders, banks, other secured and unsecured creditors, creditors' committees, acquirers, equity sponsors and other parties-in-interest involved with financially challenged companies. Houlihan Lokey's Financial Restructuring Group has over 150 professionals worldwide dedicated to providing restructuring and other financial services to distressed companies.

6.     Houlihan Lokey has agreed to provide investment banking and financial advisory services to the Debtors in these chapter 11 cases pursuant to the terms and conditions of the Agreement between the Debtors and Houlihan Lokey (the "Agreement"), a copy of which is attached to the Declaration as Appendix 1. Among other things, the Agreement provides that the Debtors shall indemnify Houlihan Lokey against any and all losses, claims, damages or liabilities to which Houlihan Lokey may become subject in connection with services provided pursuant to the Agreement. The Debtors shall pay Houlihan Lokey's fees and expenses, including counsel fees, as they are incurred in defending any such claim. Where it has been determined in a final judgment by a court of competent jurisdiction that the claim resulted from the gross negligence or willful misconduct of Houlihan Lokey, Houlihan Lokey shall repay the Debtors for any fees and expenses advanced by the Debtors pursuant to the preceding sentence. Notwithstanding a final judgment determining that a claim did not result from Houlihan Lokey's gross negligence

or willful misconduct, the Debtors shall not pay any indemnification claim without further notice and a hearing before this Court for approval of such payment.

7.     In addition to me, the principal professionals who have rendered, and are expected to render, services to the Debtors are as follows: Irwin N. Gold, Bradley C. Meyer, Jared C. Felt and Lee Ann Ghila. A summary of the qualifications of the principal professionals is attached hereto as Appendix 2 and is incorporated herein by this reference.

8.     By way of further disclosure:

a) From time to time, Houlihan Lokey's Financial Restructuring Group, which is providing the services in these cases, has provided services, and likely will continue to provide services to certain attorneys, other professionals, creditors (including lenders) and/or of the Debtors and various other parties, some of whom may be providing services to, or may be adverse to, or may be otherwise connected to, the Debtors, in each case in matters unrelated to these chapter 11 cases.

b) In addition to its Financial Restructuring Group, Houlihan Lokey and the other subsidiaries of its direct parent company, Houlihan, Lokey, Howard & Zukin, Inc., that are engaged in providing investment banking and financial advisory services globally (collectively, the "Houlihan Lokey Group") provide services to a wide range of institutions and individuals and may in the past have had, and may currently or in the future have, financial advisory or other investment banking relationships with parties that may have interests with respect to the Debtors. In the ordinary course of business, investment funds affiliated with the Houlihan Lokey Group and certain of the Houlihan Lokey Group's employees, as well as investment funds in which such employees may have financial interests, but over whose investment decisions such employees have no input or control, may acquire, hold or sell, long or short positions, or trade or otherwise effect transactions, in debt, equity, and other securities and financial instruments (including bank loans and other obligations) of, or investments in, the Debtors or other parties that may have an interest in these chapter 11 cases or have other relationships with such parties. With respect to any such securities, financial instruments and/or investments, all rights in respect of such securities, financial instruments and investments, including any voting rights, will be exercised by the holder of the rights, in its sole discretion. Moreover, the Houlihan Lokey employees who are working on these chapter 11 cases are subject to compliance mechanisms and policies and procedures designed to prevent confidential, non-public information from being improperly shared.

c) The Houlihan Lokey Group's Hedge Fund and Derivatives Valuation Services Group provides valuation opinions on the securities and derivative holdings of various business development companies, private equity firms and hedge funds, which may include debt securities of the Debtors. This work is unrelated to the financial advisory services that Houlihan Lokey intends to provide in these chapter 11 cases. Moreover, the Houlihan Lokey Group, through the establishment of an "Information Wall" has separated its employees in the Hedge Fund and Derivatives Valuation Services Group from the rest of the employees of the Houlihan Lokey Group. This "Information Wall" includes physical and technological barriers, compliance mechanisms and policies and procedures designed to prevent confidential, non-public information and work product from being shared improperly.

d) Houlihan Lokey personnel may have business associations with certain creditors of the Debtor or counsel or other professionals involved in these chapter 11 cases on matters unrelated to these chapter 11 cases. In addition, in the ordinary course of its business, Houlihan Lokey may engage counsel or other professionals in unrelated matters who now represent, or in the future may represent, creditors or other interested parties in these chapter 11 cases.

e) Houlihan Lokey is indirectly majority-owned by ORIX USA Corporation, an affiliate of ORIX Corporation, a diversified financial services company based in Japan (collectively, "ORIX"), which has a wide-range of business interests in 26 countries. ORIX's businesses (other than the Houlihan Lokey Group) are not managed or controlled by the Houlihan Lokey Group or any of its employees and the Houlihan Lokey Group has no input into any of ORIX's decisions regarding its other businesses. While ORIX does control a majority of the equity of the Houlihan Lokey Group (approximately 48% of the common equity is held by Houlihan Lokey Group employees), the Houlihan Lokey Group is operated as a separate business from all other ORIX entities. As evidence of this separateness, (i) the Houlihan Lokey Group is governed by a 15-person board of directors, eleven of whom are Houlihan Lokey Group employees and four are designated by ORIX, (ii) the activities of the Houlihan Lokey Group are managed on a day-to-day basis exclusively by Houlihan Lokey Group employees, (iii) only the profits and losses of the Houlihan Lokey Group businesses are taken into account in valuing the equity of the Houlihan Lokey Group and (iv) the aggregate annual compensation of Houlihan Lokey Group professionals is set by formula and ORIX has no input in determining that amount.

9.    To determine its relationship with parties in interest in these chapter 11 cases, Houlihan Lokey has researched the client databases maintained with respect to the Houlihan Lokey Group to determine whether it has any relationships with the entities (individually an

"Interested Party" and collectively, the "Interested Parties") that were identified to Houlihan Lokey by the Debtors. Such entities include:

a) Debtors and non-debtor affiliates;

b) DBA's (newspapers/TV stations);

c) Directors and non-director officers of the Debtors;

d) Former Directors/Officers of the Debtors;

e) Parent Stockholders (Holders of greater than 3% of the equity interests of Freedom Communications Holdings, Inc.);

f) Secured Lenders Under Credit Agreement;

g) Banks at which accounts are held;

h) Parties that filed UCC Statements;

i) Significant Litigation Claimants;

j) Debtors' Top 30 Unsecured Creditors;

k) Attorneys and other professionals of the Debtors and other Parties-In-Interest;

l) Insurance Carriers;

m) Unions related to the Debtors; and

n) Other potentially adverse parties.

In addition to checking the client data base maintained by the Houlihan Lokey Group, Houlihan Lokey checked this list of Interested Parties and determined that none of them is a company controlled by ORIX outside the Houlihan Lokey Group.

10. The attached Appendix 3 details the relationship check performed by Houlihan Lokey, and identifies any relationships discovered through such investigation that members of the Houlihan Lokey Group have with any Interested Parties in these chapter 11 cases.

11. To the best of my knowledge, information and belief after reasonable inquiry, other than as disclosed in this Affidavit, neither I, the Houlihan Lokey Group, nor any of our professionals or employees participating in or connected with Houlihan Lokey's engagement with Debtors: (i) is related to the Debtors or any other party in interest herein, the Unites States Trustee for the District of Delaware or anyone employed in the United States Trustee's Office for this District; (ii) has any connection with or holds or represents any interest adverse to the Debtors, their estates, their creditors or any other Interested Party or their respective attorneys in the matters on which Houlihan Lokey is proposed to be retained; or (iii) has advised any Interested Party, except for the Debtors, in connection with these chapter 11 cases. In addition, Houlihan Lokey does not believe that any relationship that the Houlihan Lokey Group or any of our professionals or employees participating in or connected with Houlihan Lokey's engagement with the Debtors may have with any Interested Party in connection with any unrelated matter will interfere with or impair Houlihan Lokey's representation of the Debtors in these chapter 11 cases.

12. To the extent Houlihan Lokey discovers any facts bearing on the matters described herein during the period of Houlihan Lokey's retention, Houlihan Lokey undertakes to amend and supplement the information contained in this Affidavit to disclose such facts.

13. Based on all of the foregoing, Houlihan Lokey is a "disinterested person" as that term is defined in Bankruptcy Code section 101(14).

14.     No agreement presently exists to share with any other person or firm any compensation received by Houlihan Lokey for its services in this case. If any such agreement is entered into, Houlihan Lokey undertakes to amend and supplement this Affidavit to disclose the terms of any such agreement.

15.     No promises have been received by Houlihan Lokey, or by any employee thereof, as to compensation in connection with this case other than in accordance with the provisions of the Bankruptcy Code.

16.     I am generally familiar with the Bankruptcy Code and the Bankruptcy Rules, and Houlihan Lokey will comply with them, subject to the Orders of this Court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this ___17___ day of September, 2009.

Eric Winthrop
1930 Century Park West
Los Angeles, CA  90067
Ph: (310) 553-8871
eFax: (310) 919-3624
Email:  ewinthrop@hl.com

## Appendix 1

## Agreement



_**Confidential**_

March 13, 2009

Mr. Scott Flanders
Chief Executive Officer
Freedom Communications. Inc.
17666 Fitch
Irvine, CA 92614-6022

Dear Mr. Flanders:

This letter agreement (this "Agreement") confirms the terms under which Freedom Communications, Inc., and each of its direct and indirect subsidiaries, and any entity formed by, or at the direction of, Freedom Communications, Inc. (collectively, the "Company") has engaged Houlihan Lokey Howard & Zukin Capital, Inc. ("Houlihan Lokey"), effective as of the date indicated above (the "Effective Date"), as its financial advisor to provide financial advisory services in connection with the evaluation of a potential waiver, amendment or other modification to the Company's credit facility, a financial restructuring or reorganization of the Company and with respect to such other financial matters as to which the Company and Houlihan Lokey may agree in writing during the term of this Agreement.

1. **Engagement; Services; Term.** As appropriate and to the extent requested in connection with each potential Transaction (as defined below), Houlihan Lokey will assist and advise the Company with the analysis, evaluation, pursuit and effectuation of any such Transaction. The engagement will be performed in two phases ("Phase I" and "Phase II", respectively). In Phase I, Houlihan Lokey will develop a presentation (the "Presentation") to be made, at the Company's discretion, to management and/or the Company's board of directors (the "Board") regarding the feasibility of pursuing various strategic capital structure alternatives and various transactions for implementing such alternatives. The conclusion of the Presentation shall terminate Phase I. Should the Board determine to pursue a Transaction, the Company, at its sole discretion, may commence Phase II by providing written notice to Houlihan Lokey.

   In connection with Phase I of the engagement, Houlihan Lokey will, among other things, (a) analyze the Company's financial projections, cash flows and liquidity, (b) analyze the Company's current capital structure, (c) perform a debt capacity analysis and develop capital structure alternatives, and (d) analyze the risks, pros and cons associated with various capital structure alternatives, including proposals related to a waiver, amendment, or other modification to the Company's credit facility. Phase I would include, at the Company's discretion, a presentation of the findings and recommendations to the Company's management and/or Board of Directors (which is currently scheduled for March 20th subject to change) and reasonable follow-up to Board questions and comments. In Phase II of the engagement, if elected by the Company, Houlihan Lokey would continue and/or update, as necessary, any of the tasks described in Phase I and, additionally, may lead negotiations on behalf of the Company with creditors and other parties in interest in effectuating a Transaction at the Company's request.

Houlihan Lokey does not assume any responsibility for the Company's decision to pursue (or not to pursue) any business strategy or to effect (or not to effect) a Transaction or any other strategic alternative.

This Agreement shall automatically terminate at the end of Phase I. subject to the provisions of Section 4 hereof. unless the Company makes a written request to Houlihan Lokey to undertake Phase II.

2.   **Exclusivity.**   The Company agrees that Houlihan Lokey shall be the Company's exclusive financial advisor to provide financial advisory services in connection with a Transaction until December 31, 2009 ("Exclusivity Period"). Except as provided in the last sentence. of this Section 2. in the event that, during the Exclusivity Period. the Company retains a financial advisor other than Houlihan Lokey in connection with a Transaction. the Company shall pay Houlihan Lokey an additional non-refundable cash fee of $250.000 upon the retention of such financial advisor, which Houlihan Lokey agrees is the sole remedy for Company's retention of a financial advisor other than Houlihan Lokey in connection with a Transaction during the Exclusivity Period. In the event the Company. its controlling equity holders or other affiliates, or its management receives any inquiry regarding a Transaction from any party during Phase II. the Company shall promptly inform Houlihan Lokey of such inquiry so that Houlihan Lokey can assist the Company in evaluating such party and its interest in a Transaction and in any resulting negotiations.   Notwithstanding the foregoing. Houlihan Lokey understands and agrees that the Company (i) may engage and otherwise seek advice from AlixPartners without any restriction or limitation, and (ii) has no obligation to use Houlihan Lokey to advise with respect to any acquisition. disposition. merger. consolidation. business combination or similar type of transaction that is not directly initiated as a part of a Transaction.

3.   **Fees.**   In consideration of Houlihan Lokey's acceptance of this engagement and performance of services pursuant to this Agreement. the Company shall pay the following:

i.      Phase I: The Company shall pay Houlihan Lokey a non-refundable fee of $250.000. which Houlihan Lokey acknowledges has been paid (the "Phase 1 Fee").

ii.     Phase II:  Upon a decision by the Company's Board to pursue a Transaction. and concurrently with the delivery by the Company to Houlihan Lokey of a written request to undertake Phase II. the Company shall pay Houlihan Lokey a monthly Fee of $250.000 ("Phase II Monthly Fee") and shall continue paying the Phase II Monthly Fee on the same day of each month thereafter during the term of this Agreement. In addition. the Company shall pay Houlihan Lokey deferred fees for Phase II (the "Phase II Fee(s)"). The amount of the Phase II Fees shall be determined in good faith negotiations and mutually agreed upon in writing between the Company and Houlihan Lokey promptly following Houlihan Lokey's receipt of the Company's written request to undertake Phase II. The purpose of such good faith negotiations shall be to reflect compensation that is reasonably consistent with market levels for advisors in transactions of similar magnitude and complexity. The Phase I Fee paid by the Company will be credited toward the Phase II Monthly Fees as such fees become due. However, the Phase I Fee may be credited only once. and in no event shall any Phase II Monthly Fee be reduced to less than zero.

The Phase I Fee and Phase II Fee(s) are each referred to herein as a "Transaction Fee" and are collectively referred to herein as "Transaction Fees." All payments received by Houlihan Lokey pursuant to this Agreement at any time shall become the property of Houlihan Lokey without restriction. No payments received by Houlihan Lokey pursuant to this Agreement will be put into a trust or other segregated account.

4.  **Term and Termination.** This Agreement may be terminated at any time by either party upon fifteen days' prior written notice to the other party. The expiration or termination of this Agreement shall not affect (i) any provision of this Agreement other than Sections 1 through 3 and (ii) Houlihan Lokey's right to receive, and the Company's obligation to pay, any and all fees, expenses and other amounts due and unpaid on the effective date of expiration or termination, whether or not any Transaction shall be consummated prior to or subsequent to the effective date of expiration or termination, as more fully set forth in this Agreement.

    In addition, if the Company requests Houlihan Lokey to commence services under Phase II and this Agreement is terminated by the Company during Phase II, Houlihan Lokey shall be entitled to full payment by the Company of the Phase II Fees as mutually agreed upon by the parties pursuant to Section 3(ii): (i) so long as a Transaction is consummated during the term of this Agreement, or within 12 months after the date of expiration or termination of this Agreement ("Tail Period"), and/or (ii) if an agreement in principle to consummate a Transaction is entered into by the Company during the term of this Agreement, or within the Tail Period, and such Transaction is consummated within 6 months after the expiration of the Tail Period with the counterparty named in such agreement, or with any affiliate, employee or investor in such counterparty, or any affiliate of any of the foregoing.

5.  **Agreement from Secured Lenders.** Houlihan Lokey's may in its sole discretion, condition its obligations to provide the services described herein upon, and expressly subject to, the execution of a waiver, subordination or similar agreement, in form and substance satisfactory to Houlihan Lokey, pursuant to which the Company's senior secured lenders consent to the performance of the Company's obligations under this Agreement, including, without limitation, the Company's payment of Houlihan Lokey's fees and expenses described in Sections 3 and 7 hereof, free and clear of such lenders' security interests in the Company's assets.

6.  **Transaction.** As used in this Agreement, the term "Transaction" shall mean the following:

    Any transaction or series of transactions that constitute a recapitalization or restructuring of the Company's Credit Facility, which recapitalization or restructuring is effected pursuant to an exchange transaction, tender offer, a plan of reorganization or liquidation under the Bankruptcy Code, a solicitation of consents, waivers, acceptances or authorizations, any change of control transaction, any refinancing, repurchase, exchange, conversion to equity, cancellation, forgiveness, retirement and/or a modification or amendment to the terms, conditions, or covenants (including, without limitation, the principal balance, accrued or accreted interest, payment term, other debt service requirement and/or financial or operating covenant) of any agreements or instruments governing any of the Company's other indebtedness (such modification or amendment shall include, without limitation, any forbearance for at least 6 months with respect to any payment obligation) or any combination of the foregoing transactions (each a "Transaction"):

7. **Reasonableness of Fees.** The parties acknowledge that a substantial professional commitment of time and effort will be required of Houlihan Lokey and its professionals hereunder, and that such commitment may foreclose other opportunities for the firm. Moreover, the actual time and commitment required for the engagement may vary substantially, creating "peak load" issues for the firm. Given the numerous issues which may arise in engagements such as this, Houlihan Lokey's commitment to the variable level of time and effort necessary to address such issues, the expertise and capabilities of Houlihan Lokey that will be required in this engagement, and the market rate for Houlihan Lokey's services of this nature, whether in-court or out-of-court, the parties agree that the fee arrangement provided for herein is reasonable, fairly compensates Houlihan Lokey, and provides the requisite certainty to the Company.

8. **Expenses.** In addition to all of the other fees and expenses described in this Agreement, and regardless of whether any Transaction is consummated, the Company shall, upon Houlihan Lokey's request, reimburse Houlihan Lokey for its reasonable out-of-pocket expenses incurred from time to time in connection with its services hereunder; provided, however, that such expenses will not exceed $50,000 in the aggregate without the Company's prior written consent. Houlihan Lokey bills its clients for its reasonable out-of-pocket expenses including, but not limited to (i) travel-related and certain other expenses, without regard to volume-based or similar credits or rebates Houlihan Lokey may receive from, or fixed-fee arrangements made with, travel agents, airlines or other vendors, and (ii) research, database and similar information charges paid to third party vendors, and postage, telecommunication and duplicating expenses, to perform client-related services that are not capable of being identified with, or charged to, a particular client or engagement in a reasonably practicable manner, based upon a uniformly applied monthly assessment or percentage of the fees due to Houlihan Lokey.

Houlihan Lokey shall, in addition, be reimbursed by the Company for the fees and expenses of Houlihan Lokey's legal counsel incurred in connection with the negotiation and performance of this Agreement and the matters contemplated hereby; provided, however, that the Company shall not be responsible for any fees and expenses of Houlihan Lokey's legal counsel unless such legal counsel is pre-approved by the Company which pre-approval is not to be unreasonably withheld or delayed.

9. **Invoicing and Payment.** All amounts payable to Houlihan Lokey shall be made in lawful money of the United States in accordance with the payment instructions set forth on the invoice provided with this Agreement, or to such accounts as Houlihan Lokey shall direct, and the Company shall provide contemporaneous written notice of each such payment to Houlihan Lokey. All amounts invoiced by Houlihan Lokey shall be exclusive of value added tax, withholding tax, sales tax and any other similar taxes ("Taxes"). All amounts charged by Houlihan Lokey will be invoiced together with Taxes where appropriate.

10. **Information.** The Company will provide Houlihan Lokey with access to management and other representatives of the Company, as reasonably requested by Houlihan Lokey. The Company will furnish Houlihan Lokey with such information as Houlihan Lokey may reasonably request for the purpose of carrying out its engagement hereunder, all of which will be, to the Company's best knowledge, accurate and complete at the time furnished. The Company further represents and warrants that any financial projections delivered to Houlihan Lokey have been or will be reasonably prepared in good faith on bases reflecting the best currently available estimates and judgments of the future financial results and condition of the Company. The Company will promptly notify Houlihan Lokey in writing of any material inaccuracy or misstatement in, or material omission from, any information previously delivered to Houlihan Lokey, or any

materials provided to any interested party. Houlihan Lokey shall rely, without independent verification, on the accuracy and completeness of all information that is publicly available and of all information furnished by or on behalf of the Company or any other potential party to any Transaction or otherwise reviewed by Houlihan Lokey. The Company understands and agrees that Houlihan Lokey will not be responsible for the accuracy or completeness of such information, and shall not be liable for any inaccuracies or omissions therein. The Company acknowledges that Houlihan Lokey has no obligation to conduct any appraisal of any real property or fixed assets or liabilities of the Company or any other party. Any advice (whether written or oral) rendered by Houlihan Lokey pursuant to this Agreement is intended solely for the use of the Company. Any advice rendered by, or other materials prepared by, or any communication from, Houlihan Lokey may not be disclosed, in whole or in part, to any third party, or summarized, quoted from, or otherwise referred to in any manner without the prior written consent of Houlihan Lokey. Notwithstanding anything to the contrary contained herein, the Company shall be permitted to provide such information to its counsel, auditors and tax advisors, provided that each such party agrees to keep such information confidential and with the understanding that such party may not rely upon such information for any purpose. In addition, the terms of this Agreement may not otherwise be referred to without our prior written consent.

11. **Confidential Information.** Houlihan Lokey acknowledges that, in connection with the services to be provided pursuant to this Agreement, certain confidential, non-public and proprietary information concerning the Company and a Transaction ("Confidential Information") has been or may be disclosed by the Company to Houlihan Lokey or its employees, affiliates, attorneys, subcontractors and advisors (collectively, "Representatives"). Houlihan Lokey agrees that, without the Company's prior consent, no Confidential Information will be disclosed, in whole or in part, to any other person (other than to any potential party to a Transaction under appropriate assurances of confidentiality, to those Representatives who need access to any Confidential Information for purposes of performing the services to be provided hereunder, or as may be required by law or regulatory authority). The term "Confidential Information" does not include any information: (a) that was already in the possession of Houlihan Lokey or any of its Representatives, or that was available to Houlihan Lokey or any of its Representatives on a non-confidential basis, prior to the time of disclosure to Houlihan Lokey or such Representatives; (b) obtained by Houlihan Lokey or any of its Representatives from a third person which, insofar as is known to Houlihan Lokey or such Representatives, is not subject to any prohibition against disclosure; (c) which was or is independently developed by Houlihan Lokey or any of its Representatives without use of the Confidential Information or violation any confidentiality obligations under this paragraph; or (d) which was or becomes generally available to the public through no fault of Houlihan Lokey. If Houlihan Lokey becomes required by legal process or regulatory authority to disclose any Confidential Information, prompt notice thereof shall be given to the Company, and Houlihan Lokey may disclose only that information which its counsel advises it is compelled to disclose. Houlihan Lokey's obligations under this paragraph shall remain in effect for a period of one year after the expiration or termination of this Agreement.

12. **Limitations on Services as Advisor.** Houlihan Lokey's services are limited to those specifically provided in this Agreement, or subsequently agreed-upon, in writing, by the parties hereto. Houlihan Lokey shall have no obligation or responsibility for any other services including, without limitation, any crisis management or business consulting services related to, among other things, the implementation of any operational, organizational administrative, cash management, or similar activities. Houlihan Lokey is providing the Company with Houlihan Lokey's services hereunder as an independent contractor, and the parties agree that this Agreement does not create

an agency, fiduciary, or third party beneficiary relationship between Houlihan Lokey, on the one hand, and the Company and/or its creditors or any other person, on the other hand. Any advice (whether written or oral) rendered by Houlihan Lokey pursuant to this Agreement is intended solely for the use of the Company in considering the matters to which this Agreement relates, and such advice may not be relied upon by any other person or used for any other purpose. In performing its services pursuant to this Agreement, Houlihan Lokey is not assuming any responsibility for the Company's decision to pursue, or not to pursue, any business strategy, or to effect, or not to effect, any Transaction(s), which decision shall be made by the Company in its sole discretion.

13. <u>Bankruptcy Court Approval</u>. In the event that the Company is or becomes a debtor under Chapter 11 of the Bankruptcy Code, whether voluntarily or involuntarily, during Phase II, the Company shall seek an order authorizing the employment of Houlihan Lokey pursuant to the terms of this Agreement, as a professional person pursuant to, and subject to the standard of review of, Section 328(a) of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and applicable local rules and orders and not subject to any other standard of review under Section 330 of the Bankruptcy Code. In so agreeing to seek Houlihan Lokey's retention under Section 328(a) of the Bankruptcy Code, the Company acknowledges that it believes that Houlihan Lokey's general restructuring experience and expertise, its knowledge of the capital markets and its merger and acquisition capabilities will inure to the benefit of the Company in pursuing any Transaction, that the value to the Company of Houlihan Lokey's services derives in substantial part from that expertise and experience and that, accordingly, the structure and amount of the contingent Transaction Fee(s) is reasonable regardless of the number of hours to be expended by Houlihan Lokey's professionals in the performance of the services to be provided hereunder. The Company shall submit Houlihan Lokey's employment application as soon as practicable following the Company's filing of a voluntary Chapter 11 case, or the entry of an order for relief in any involuntary case filed against the Company, and use its best efforts to cause such application to be considered on the most expedited basis. The employment application and the proposed order authorizing employment of Houlihan Lokey shall be provided to Houlihan Lokey as much in advance of any Chapter 11 filing as is practicable, and must be acceptable to Houlihan Lokey in its sole discretion. Following entry of the order authorizing the employment of Houlihan Lokey, the Company shall pay all fees and expenses due pursuant to this Agreement, as approved by the court having jurisdiction of the bankruptcy case involving the Company (the "Bankruptcy Court"), as promptly as possible in accordance with the terms of this Agreement and the order of such Bankruptcy Court, the Bankruptcy Code, the Bankruptcy Rules and applicable local rules and orders, and will work with Houlihan Lokey to promptly file any and all necessary applications regarding such fees and expenses with the Bankruptcy Court. Houlihan Lokey shall have no obligation to provide services under this Agreement in the event that the Company becomes a debtor under the Bankruptcy Code unless Houlihan Lokey's retention under this Agreement is approved under Section 328(a) of the Bankruptcy Code by final order of the Bankruptcy Court no longer subject to appeal, rehearing, reconsideration or petition for certiorari, and which is acceptable to Houlihan Lokey in all respects. If the order authorizing the employment of Houlihan Lokey is not obtained, or is later reversed or set aside for any reason, Houlihan Lokey may terminate this Agreement, and the Company shall reimburse Houlihan Lokey for all fees and expenses reasonably incurred prior to the date of expiration or termination, subject to the requirements of the Bankruptcy Code, Bankruptcy Rules and applicable local rules and orders. Prior to commencing a Chapter 11 case, the Company shall pay all amounts due and payable to Houlihan Lokey in cash. The terms of this Section are solely for the benefit of Houlihan Lokey, and may be waived, in whole or in part, only by Houlihan Lokey.

14. **Additional Services.** To the extent Houlihan Lokey is requested by the Company to perform any financial advisory or investment banking services which are not within the scope of this engagement, the Company shall pay Houlihan Lokey such fees as shall be mutually agreed upon by Houlihan Lokey and the Company in writing, in advance, depending on the level and type of services required, and shall be in addition to the fees and expenses described hereinabove. If Houlihan Lokey agrees to act in any such capacity, the Company and Houlihan Lokey will enter into an appropriate form of agreement relating to the type of transaction involved and containing customary terms and conditions, including fees customarily payable to nationally recognized investment banks performing such roles in connection with comparable transactions. The Company acknowledges that this Agreement is neither an express nor an implied commitment by Houlihan Lokey to act in any such capacity, which commitment shall only be set forth in a separate agreement.

15. **Post-Termination Services.** If Houlihan Lokey is required to render services not described herein, but which relate directly or indirectly to the subject matter of this Agreement (including, but not limited to, producing documents, answering interrogatories, attending depositions, giving expert or other testimony, whether by subpoena, court process or order, or otherwise), the Company shall pay Houlihan Lokey additional fees to be mutually agreed upon for such services, plus reasonable related out-of-pocket costs and expenses, including, among other things, the reasonable legal fees and expenses of Houlihan Lokey's counsel in connection therewith.

16. **Credit.** After the announcement or closing of any Transaction, Houlihan Lokey may, at its own expense, place announcements that have been pre-approved by the Company on its corporate website and in financial and other newspapers and periodicals (such as a customary "tombstone" advertisement, including the Company's logo or other identifying marks) describing its services in connection therewith. Furthermore, if requested by Houlihan Lokey, the Company agrees that in any press release announcing any Transaction, the Company will consider including in such press release a mutually acceptable reference to Houlihan Lokey's role as financial advisor to the Company with respect to such Transaction.

Choice of Law; Jury Trial Waiver; Jurisdiction. THIS AGREEMENT SHALL BE DEEMED TO BE MADE IN NEW YORK. ALL DISPUTES ARISING OUT OF OR RELATED TO THIS AGREEMENT SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK WITHOUT REGARD TO PRINCIPLES OF CONFLICTS OF LAWS. EACH OF HOULIHAN LOKEY AND THE COMPANY (ON ITS OWN BEHALF AND, TO THE EXTENT PERMITTED BY APPLICABLE LAW, ON BEHALF OF ITS EQUITY HOLDERS) IRREVOCABLY WAIVES ANY RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM (WHETHER BASED UPON CONTRACT, TORT OR OTHERWISE) RELATED TO OR ARISING OUT OF THE ENGAGEMENT OF HOULIHAN LOKEY PURSUANT TO, OR THE PERFORMANCE BY HOULIHAN LOKEY OF THE SERVICES CONTEMPLATED BY, THIS AGREEMENT, REGARDLESS OF ANY PRESENT OR FUTURE DOMICILE OR PRINCIPAL PLACE OF BUSINESS OF THE PARTIES HERETO, EACH PARTY HEREBY IRREVOCABLY CONSENTS AND AGREES THAT ANY CLAIMS OR DISPUTES BETWEEN OR AMONG THE PARTIES HERETO ARISING OUT OF OR RELATED TO THIS AGREEMENT SHALL BE BROUGHT AND MAINTAINED IN ANY FEDERAL OR STATE COURT OF COMPETENT JURISDICTION SITTING IN THE COUNTY OF NEW YORK IN THE STATE OF NEW YORK OR IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK, WHICH COURTS SHALL

HAVE EXCLUSIVE JURISDICTION OVER THE ADJUDICATION OF SUCH
MATTERS, AND AGREES TO VENUE IN SUCH COURTS; PROVIDED THAT SUCH
CONSENT AND AGREEMENT SHALL NOT BE DEEMED TO REQUIRE ANY
BANKRUPTCY CASE INVOLVING THE COMPANY TO BE FILED IN SUCH
COURTS, AND IF THE COMPANY BECOMES A DEBTOR UNDER CHAPTER 11 OF
THE BANKRUPTCY CODE, DURING ANY SUCH CASE, ANY CLAIMS MAY ALSO
BE HEARD AND DETERMINED BEFORE THE BANKRUPTCY COURT. EACH
PARTY FURTHER IRREVOCABLY SUBMITS AND CONSENTS IN ADVANCE TO
SUCH JURISDICTION AND VENUE IN ANY ACTION OR SUIT COMMENCED IN
ANY SUCH COURTS, AND HEREBY WAIVES IN ALL RESPECTS ANY CLAIM OR
OBJECTION WHICH IT MAY HAVE BASED UPON LACK OF PERSONAL
JURISDICTION, IMPROPER VENUE OR FORUM NON CONVENIENS. THE
COMPANY AGREES THAT A FINAL JUDGMENT IN ANY SUCH ACTION, SUIT OR
CLAIM BROUGHT IN ANY OF THE COURTS REFERRED TO ABOVE SHALL BE
CONCLUSIVE AND BINDING UPON IT AND MAY BE ENFORCED IN ANY OTHER
COURTS HAVING JURISDICTION OVER IT BY SUIT UPON SUCH JUDGMENT.
THE COMPANY IRREVOCABLY CONSENTS TO SERVICE OF PROCESS IN ALL
SUCH DISPUTES BY THE MAILING OF COPIES OF SUCH PROCESS TO THE
COMPANY AT 17666 Fitch, Irvine, CA 92614-6022.

17. **Indemnification and Standard of Care.**  As a material part of the consideration for the
agreement of Houlihan Lokey to furnish its services under this Agreement, the Company agrees
(i) to indemnify and hold harmless Houlihan Lokey and its affiliates. and their respective past.
present and future directors. officers. shareholders. partners. members. employees. agents.
representatives. advisors. subcontractors and controlling persons (collectively. the "Indemnified
Parties"), to the fullest extent lawful, from and against any and all losses, claims. damages or
liabilities (or actions in respect thereof), joint or several, arising out of or related to Houlihan
Lokey's performance under this Agreement, Houlihan Lokey's engagement under this
Agreement. any Transaction or proposed Transaction, or any actions taken or omitted to be taken
by an Indemnified Party or the Company in connection with this Agreement and (ii) to reimburse
each Indemnified Party for all expenses (including, without limitation, the fees and expenses of
counsel) as they are incurred in connection with investigating. preparing. pursuing. defending.
settling or compromising any action. suit. dispute. inquiry. investigation or proceeding. pending
or threatened, brought by or against any person (including. without limitation. any shareholder or
derivative action). arising out of or relating to this Agreement. or such engagement. Transaction
or actions.  However. the Company shall not be liable under the foregoing indemnity and
reimbursement agreement for any loss. claim. damage or liability which is finally judicially
determined by a court of competent jurisdiction to have resulted primarily from the bad faith.
willful misconduct or gross negligence of such Indemnified Party.

If for any reason the foregoing indemnification or reimbursement is unavailable to any
Indemnified Party or insufficient fully to indemnify any such party or to hold it harmless in
respect of any losses. claims. damages, liabilities or expenses referred to in such indemnification
or reimbursement provisions. then the Company shall contribute to the amount paid or payable by
the Indemnified Party as a result of such losses. claims. damages. liabilities or expenses in such
proportion as is appropriate to reflect the relative benefits received by the Company. on the one
hand. and Houlihan Lokey. on the other hand. in connection with the matters contemplated by
this Agreement. If. however. the allocation provided by the immediately preceding sentence is

not permitted by applicable law, then the Company shall contribute to such amount paid or payable by any Indemnified Party in such proportion as is appropriate to reflect not only such relative benefits, but also the relative fault of the Company, on the one hand, and such Indemnified Party, on the other hand, in connection therewith, as well as any other relevant equitable considerations. Notwithstanding the foregoing, in no event shall the Indemnified Parties be required to contribute an aggregate amount in excess of the amount of fees actually received by Houlihan Lokey from the Company pursuant to this Agreement. Relative benefits received by the Company, on the one hand, and Houlihan Lokey, on the other hand, shall be deemed to be in the same proportion as (i) the total value paid or received or contemplated to be paid or received by the Company, and its security holders, and creditors, as the case may be, pursuant to the transaction(s) (whether or not consummated) contemplated by the engagement hereunder, bears to (ii) the fees received by Houlihan Lokey under the Agreement. The Company shall not settle, compromise or consent to the entry of any judgment in or otherwise seek to terminate any pending or threatened action, suit, dispute, inquiry, investigation or proceeding in respect of which indemnification or contribution may be sought hereunder (whether or not an Indemnified Party is an actual or potential party thereto), unless such settlement, compromise, consent or termination contains a release of the Indemnified Parties reasonably satisfactory in form and substance to Houlihan Lokey.

The Company further agrees that neither Houlihan Lokey nor any other Indemnified Party shall have any liability (whether direct or indirect and regardless of the legal theory advanced) to the Company or any person or entity asserting claims on behalf of or in right of the Company related to or arising out of Houlihan Lokey's performance under this Agreement, Houlihan Lokey's engagement under this Agreement, any Transaction or proposed Transaction, or any actions taken or omitted to be taken by an Indemnified Party or the Company in connection with this Agreement, except for losses, claims, damages or liabilities incurred by the Company which are finally judicially determined by a court of competent jurisdiction to have resulted primarily from the bad faith, willful misconduct or gross negligence of such Indemnified Party. The indemnity, reimbursement, and other obligations and agreements of the Company set forth herein (i) shall apply to any services provided by Houlihan Lokey in connection with this engagement prior to the date hereof and to any modifications of this Agreement, (ii) shall be in addition to any obligation or liability which the Company may otherwise have to any Indemnified Party, (iii) shall remain operative and in full force and effect regardless of any investigation made by or on behalf of the Company or any Indemnified Party or any person controlling any of them, and (iv) shall survive the completion of the services described in, and any expiration or termination of the relationship established by, this Agreement.

The Company shall cause any new company that may be formed by the Company or the Company's subsidiaries, for any purpose, to agree to all of the obligations in this Section to Houlihan Lokey in accordance with the foregoing provisions. Prior to entering into any agreement or arrangement with respect to, or effecting, any (i) merger, statutory exchange or other business combination or proposed sale, exchange, dividend or other distribution or liquidation of all or a significant portion of its assets, or (ii) significant recapitalization or reclassification of its outstanding securities, in either case that does not directly or indirectly provide for the assumption of the obligations of the Company set forth in this Agreement, the Company will notify Houlihan Lokey in writing thereof (if not previously so notified) and, if requested by Houlihan Lokey, shall arrange in connection therewith alternative means of providing for the obligations of the Company set forth in this Agreement, including the assumption of such obligations by another party, insurance, surety bonds, the creation of an

escrow, or other credit support arrangements, in each case·in-an amount and upon terms and conditions reasonably satisfactory to Houlihan Lokey. The Company agrees that Houlihan Lokey would be irreparably injured by any breach of this Agreement (including the agreement set forth in the immediately preceding sentence). that money damages alone would not be an adequate remedy for any such breach and that. in the event of any such breach. Houlihan Lokey shall be entitled. in addition to any other remedies. to pursue injunctive relief and specific performance.

18. **Miscellaneous.** This Agreement shall be binding upon the parties hereto and their respective successors. heirs and assigns and any successor, heir or assign of any substantial portion of such parties' respective businesses and/or assets. If appropriate, in connection with performing its services for the Company hereunder Houlihan Lokey may utilize the services of one or more of its affiliates, in which case the references herein to Houlihan Lokey shall include such affiliates. provided, however. that the fees and other obligations described herein comprise all compensation and other obligations to be paid to Houlihan Lokey and its affiliates. and neither Houlihan Lokey, nor any affiliate of Houlihan Lokey, shall charge any separate or additional fees. or seek the payment of any additional obligations. for services rendered pursuant hereto.

Nothing in this Agreement. express or implied. is intended to confer or does confer on any person or entity. other than the parties hereto, the Indemnified Parties and each of their respective successors, heirs and assigns. any rights or remedies under or by reason of this Agreement or as a result of the services to be rendered by Houlihan Lokey hereunder.

This Agreement is the complete and exclusive statement of the entire understanding of the parties regarding the subject matter hereof. and supersedes all previous agreements or understandings regarding the same. whether written or oral. This Agreement may not be amended. and no portion hereof may be waived. except in a writing duly executed by the parties hereto.

The invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any other provision of this Agreement, which shall remain in full force and effect pursuant to the terms hereof.

To help the United States government fight the funding of terrorism and money laundering activities. the federal law of the United States requires all financial institutions to obtain. verify and record information that identifies each person with whom they do business as a condition to doing business with that person. Accordingly. the Company will provide Houlihan Lokey upon request certain identifying information necessary to verify the Company's identity. such as a government-issued identification number (e.g.. a U.S. taxpayer identification number), certified articles of incorporation. a government-issued business license. partnership agreement or trust instrument.

This Agreement may be executed in any number of counterparts. each of which will be deemed an original and all of which will constitute one and the same instrument. Such counterparts may be delivered by one party to the other by facsimile or other electronic transmission. and such counterparts shall be valid for all purposes.

The Company has all requisite power and authority to enter into this Agreement and to perform its obligations hereunder. This Agreement has been duly and validly authorized by all necessary action on the part of the Company and has been duly executed and delivered by the Company and constitutes a legal. valid and binding agreement of the Company (and its direct and indirect subsidiaries and controlled affiliates). enforceable in accordance with its terms. This Agreement

Scott Flanders
Freedom Communications. Inc.
March 13. 2009

- 11 -

has been reviewed by the signatories hereto and their counsel. There shall be no construction of any provision against Houlihan Lokey because this Agreement was drafted by Houlihan Lokey, and the parties waive any statute or rule of law to such effect.

The Company agrees that it will be solely responsible for ensuring that any Transaction complies with applicable law. The Company understands that Houlihan Lokey is not undertaking to provide any legal, regulatory. accounting. insurance, tax or other similar professional advice and the Company confirms that it is relying on its own counsel, accountants and similar advisors for such advice.

To the extent that the Company hereunder is comprised of more than one entity or company. the obligations of the Company under this Agreement are joint and several, and any consent, direction, approval, demand, notice or the like given by any one of such entities or companies shall be deemed given by all of them and, as such, shall be binding on the Company.

The Company understands and acknowledges that Houlihan Lokey and its affiliates. including ORIX USA Corporation and its subsidiaries and affiliates (collectively, the "Houlihan Lokey Group"). engage in providing investment banking. securities trading. financing, and financial advisory services and other commercial and investment banking products and services to a wide range of institutions and individuals. In the ordinary course of business. the Houlihan Lokey Group and certain of its employees, as well as investment funds in which they may have financial interests. may acquire. hold or sell, long or short positions, or trade or otherwise effect transactions, in debt, equity, and other securities and financial instruments (including bank loans and other obligations) of, or investments in, the Company or any other party that may be involved in the matters contemplated by this Agreement or have other relationships with the Company. With respect to any such securities. financial instruments and/or investments, all rights in respect of such securities, financial instruments and investments. including any voting rights, will be exercised by the holder of the rights, in its sole discretion. In addition, the Houlihan Lokey Group may in the past have had, and may currently or in the future have. financial advisory or other investment banking relationships with parties other than the Company. including parties that may have interests with respect to the Company. a Transaction or other parties involved in a Transaction. from which conflicting interests or duties may arise. Although the Houlihan Lokey Group in the course of such other activities and relationships may acquire information about the Company. a Transaction or such other parties. the Houlihan Lokey Group shall have no obligation to. and may not be contractually permitted to. disclose such information. or the fact that the Houlihan Lokey Group is in possession of such information. to the Company or to use such information on the Company's behalf.

If the foregoing correctly sets forth our Agreement. please sign and return to us the enclosed duplicate hereof along with a check (or wire transfer confirmation) for $250,000 on account of the Phase I Fee.

All of us at Houlihan Lokey thank you for choosing us to advise the Company. and look forward to working with you on this engagement.

Scott Flanders
Freedom Communications. Inc.
March 13, 2009

- 12 -

Very truly yours,

HOULIHAN LOKEY HOWARD & ZUKIN CAPITAL, INC.

By: _____
      Irwin N. Gold
      Senior Managing Director

Accepted and agreed to as of the Effective Date:

Freedom Communications. Inc.. On behalf of itself. its direct and indirect subsidiaries and its controlled affiliates

By: _____
      Scott Flanders
      Chief Executive Officer

Very truly yours,

HOULIHAN LOKEY HOWARD & ZUKIN CAPITAL, INC.


By: _____
Irwin N. Gold
Senior Managing Director


Accepted and agreed to as of the Effective Date:

Freedom Communications, Inc., On behalf of itself, its direct and indirect subsidiaries and its controlled affiliates


By: _____
Scott Flanders
Chief Executive Officer



# HOULIHAN LOKEY

May 9, 2009

Personal and Confidential

Mr. Scott Flanders
Chief Executive Officer
Freedom Communications, Inc.
17666 Fitch
Irvine, CA 92614-6022

<u>First Amendment to:</u>
<u>Engagement Agreement Between Houlihan Lokey Howard & Zukin Capital, Inc. and Freedom</u>
<u>Communications, Inc. Dated March 13, 2009 (herein, the "Agreement")</u>

Dear Mr. Flanders:

This letter agreement shall constitute the First Amendment (the "First Amendment") to the above-referenced Agreement, which First Amendment shall be effective as of May 8, 2009 (the "First Amendment Effective Date"). To the extent there is any inconsistency between the Agreement and this First Amendment, this First Amendment shall control.

The Agreement is hereby amended as follows (capitalized terms not otherwise defined herein shall have the meaning ascribed to such terms in the Agreement):

1.  The provisions of Section 3(ii) of the Agreement are deleted in their entirety. The deleted provisions of Section 3(ii) of the Agreement are hereby replaced by the following:

    *"Phase II Fees   Upon its execution of the First Amendment, the Company shall pay Houlihan Lokey a non-refundable monthly Fee of $200,000 ("Phase II Monthly Fee") and shall continue paying the Phase II Monthly Fee on the same day of each month thereafter during the term of this Agreement Houlihan Lokey acknowledges that the first Phase II Monthly Fee due upon execution of this First Amendment has been paid due to Houlihan Lokey's crediting of $200,000 of the Phase I Fee and that the second Phase II Monthly Fee owed by the Company will be $150,000 due to Houlihan Lokey's crediting of $50,000 of the Phase I Fee. Each Phase II Monthly Fee shall be earned upon Houlihan Lokey's receipt thereof in consideration of Houlihan Lokey accepting this engagement and performing services as described herein. Beginning upon receipt of the seventh Phase II Monthly Fee, 50% of the Phase II Monthly Fees timely received on and thereafter by Houlihan Lokey shall be credited against the Phase II Deferred Fee (as defined below) to which Houlihan Lokey becomes entitled hereunder (it being understood and agreed*

that no Phase II Monthly Fee shall be credited more than once), except that, in no event, shall such Phase II Deferred Fee be reduced below zero.

Deferred Fee: In addition to the other fees provided for herein, upon the consummation of a Transaction (as defined herein), Houlihan Lokey shall earn and the Company shall promptly pay a cash fee equal to $6,000,000 (the "Phase II Deferred Fee"). The Phase II Monthly Fee and the Phase II Deferred Fee are referred to herein as the "Phase II Fees.""

2.  The second paragraph of Section 4 of the Agreement is deleted in its entirety. The deleted paragraph of Section 4 of the Agreement is hereby replaced by the following:

"In addition, if the Company requests Houlihan Lokey to commence services under Phase II and this Agreement is terminated by the Company, Houlihan Lokey shall be entitled to full payment by the Company of the Phase II Deferred Fee pursuant to Section 3(ii): (i) so long as a Transaction is consummated during the term of this Agreement, or within 12 months after the date of expiration or termination of this Agreement ("Tail Period"), and/or (ii) if an agreement in principle to consummate a Transaction is entered into by the Company during the term of this Agreement, or within the Tail Period, and such Transaction is consummated during the Tail Period or within 6 months after the expiration of the Tail Period with the counterparty named in such agreement, or with any affiliate, employee or investor in such counterparty, or any affiliate of any of the foregoing."

So long as Irwin Gold and Eric Winthrop are employed by Houlihan Lokey on a full-time basis during the term of the Agreement, Houlihan Lokey agrees to use commercially reasonable efforts to cause them to actively lead the engagement under Phase II.

The Company acknowledges and agrees that by its execution of this First Amendment it is hereby delivering to Houlihan Lokey a written request to commence Phase II as contemplated in the Agreement. In addition, the Company confirms that the letter dated March 31, 2009 from Rachel Sagan, General Counsel of the Company, to Irwin Gold, Senior Managing Director of Houlihan Lokey, which indicated that the Company was not requesting Houlihan Lokey to undertake Phase II services and, therefore, the Agreement was terminated, has been superseded by this First Amendment.

Except as specifically provided in this First Amendment, all terms of the Agreement shall remain unchanged, and in full force and effect.

If the foregoing is acceptable, please so indicate by signing and returning a copy of this First Amendment, and returning such executed copy to the undersigned via facsimile.

Very truly yours,
HOULIHAN LOKEY HOWARD & ZUKIN CAPITAL, INC.

By: _____
    Eric Winthrop
    Managing Director

The foregoing First Amendment has been read, understood, accepted and approved, and the Company hereby agrees to retain Houlihan Lokey upon the terms and conditions contained in the Agreement, as amended by this First Amendment.

Accepted and agreed to as of the First Amendment Effective Date:

FREEDOM COMMUNICATIONS, INC.

By: _____
Mr. Scott Flanders
President and CEO

### Appendix 2

### Biographies of Professionals

**Irwin N. Gold**

Mr. Gold is a Senior Managing Director in Houlihan Lokey's Los Angeles and New York offices and the co-chairman of Houlihan Lokey's Board of Directors. He is also the global co-head of the firm's Financial Restructuring Group, which he co-founded in 1988. He has led many of the Group's largest, most complex financial restructuring engagements, both in bankruptcy and out-of-court. He has testified on numerous occasions as an expert witness on restructuring matters, has spoken publicly on a variety of financial restructuring topics and is the author of *Valuation of the Restructured Enterprise and Its Effect on Negotiating Leverage*. He has also served on the boards of directors of numerous public companies, and is a member of the International Insolvency Institute.

Mr. Gold leads the Group's telecommunications industry efforts, including advising Covad Communications with respect to its restructuring, advising Global TeleSystems regarding its global recapitalization, advising GST Telecommunications in its sale to Time Warner Telecom, advising NorthPoint Communications in its sale to AT&T, advising XO Communications with respect to its restructuring, and advising the creditors' committees of WorldCom, Williams Communications, ICG Communications, Asia Global Crossing and Allegiance Telecom. In addition, he advised Dobson Communications on its preferred exchange offer and the company's subsequent $5.6 billion sale to AT&T.

Before joining Houlihan Lokey, Mr. Gold was a principal of the Seneca Group, an investment banking and financial advisory firm. From 1985 to 1986, he was the vice president and director of corporate finance for Wood Bros. Homes, a Denver-based real estate and mortgage banking company, where he helped negotiate a workout and sale of the company. From 1982 through 1985, he was associated with the corporate department of Gibson Dunn & Crutcher.

Mr. Gold holds a J.D. from the University Of Virginia School Of Law and a B.A. in economics, *summa cum laude* and Phi Beta Kappa, from Duke University. He is registered with FINRA as a General Securities Principal (Series 7, 24 and 63).

**Eric Winthrop**

Mr. Winthrop is a Managing Director in Houlihan Lokey's Los Angeles office, where he is a member of the Financial Restructuring Group. He specializes in financial restructuring, M&A and financing transactions, and his experience spans numerous industries. His notable clients include Southern California Edison, Northwest Airlines, Movie Gallery, American Restaurant Group (Stuart Anderson's Black Angus), DDi Corp., Scotia Pacific, Silicon Graphics, Pacific Lumber Company, Atlas Air, Malden Mills, Huntsman Corporation and SpectraSite Communications.

Before joining Houlihan Lokey, Mr. Winthrop was a member of the corporate finance, restructuring and disputes group of Price Waterhouse, where he specialized in operational

consulting for financially distressed companies, as well as in valuations and litigation consulting-related projects.

Mr. Winthrop has authored or co-authored materials and/or spoken on a number of topics, including *Trends and* Opportunities *in U.S. Restructurings*, *Financial Restructuring Issues Impacting Trade Creditors*, *Buying & Selling the Troubled Company* (2001 revision and seminar series, and 2007 seminar series), and *Investing in Distressed Securities: An Overview of an Expanding Asset Class*.

Mr. Winthrop holds a B.A. in business economics, with honors, from the University of California at Santa Barbara. He is a member of the Turnaround Management Association, and he is registered with FINRA as a General Securities Representative (Series 7 and 63).


### Bradley C. Meyer

Mr. Meyer is a Senior Vice President in the Financial Restructuring Group in Houlihan Lokey's Los Angeles office.

Before joining the firm, Mr. Meyer was a financial analyst with Lazard Freres, specializing in mergers, acquisitions and corporate restructurings. He was also a summer analyst with Merrill Lynch and Credit Suisse First Boston.

Mr. Meyer holds an A.B. in economics, *cum laude*, from Harvard University. He is registered with FINRA as a General Securities Representative (Series 7 and 63).


### Jared C. Felt

Mr. Felt is a Director in Houlihan Lokey's Los Angeles office specializing in corporate finance and restructurings. He has completed over 150 advisory and financing transactions and raised over $40 billion of debt and equity for companies in a wide range of industries.

Before joining Houlihan Lokey, Mr. Felt served as a managing director in the restructuring group at Credit Suisse. He worked at Credit Suisse and Donaldson, Lufkin & Jenrette, a predecessor firm, for 12 years.

Notable clients during his career include British Energy, Champion Enterprises, GVT, NTL, ON Semiconductor and Standard Pacific. NTL's $23 billion restructuring was selected as the "Overall Deal of the Year" by Investment Dealers' Digest and "Best Restructuring Deal for Western Europe" in 2002. Mr. Felt served as the company's financial advisor.

Before joining Wall Street, Mr. Felt lived in Japan for six years, working on the senior management team at Taiko Refractories, as well as for the Japanese Ministries of Foreign Affairs and Education.

Mr. Felt received an honors B.A. in economics, *summa cum laude*, from Weber State University and an M.B.A. from the Stanford Graduate School of Business.

## Lee Ann Gliha

Ms. Gliha is a Director in Houlihan Lokey's Los Angeles office, where she works in the Media & Telecom Group. She joined the firm in October 2008.

Before joining Houlihan Lokey, Ms. Gliha served as the EVP, Corporate Finance at Live Nation, where she was responsible for all the mergers & acquisitions, financing, investor relations and strategic planning functions of the company. During her time there, she oversaw 19 M&A and capital investment transactions and raised over $400 million of new capital.

Earlier, Ms. Gliha worked as an investment banker for 10 years, focusing primarily on the Media & Telecommunications sectors at Bank of America, UBS Investment Bank and Donaldson, Lufkin & Jenrette. While at those firms she advised on merger & acquisition assignments and raised over $40 billion in financings.

Ms. Gliha graduated *summa cum laude* from Claremont McKenna College with a B.A. in economics. She is registered with FINRA as a General Securities Representative (Series 7 and 63).

## Appendix 3

### Interested Party Submission
### And Relationship Disclosure

# FREEDOM COMMUNICATIONS
## PARTIES-IN-INTEREST LIST

### 1. DEBTORS AND NON- DEBTOR AFFILIATES

Freedom Communications Holdings, Inc.

Freedom Communications, Inc.

Freedom Services, Inc.

Freedom Newspapers, Inc.

Appeal-Democrat, Inc.

Florida Freedom Newspapers, Inc.

Freedom Arizona Information, Inc.

Freedom Colorado Information, Inc.

Gazette Charities

Freedom Eastern North Carolina
Communications, Inc.

Freedom Newspaper Acquisitions, Inc.

Freedom Newspapers of New Mexico,
L.L.C.

The Clovis News-Journal

Freedom Newspapers

The Creative Spot, L.L.C.

Freedom Newspapers of Illinois, Inc.

Freedom Newspapers of Southwestern
Arizona, Inc.

Freedom Shelby Star, Inc.

Freedom Publicaciones S.A. de C.V.

Gaston Gazette, LLP

Gazette Charities, Inc.

Illinois Freedom Newspapers, Inc.

Lima News

Missouri Freedom Newspapers, Inc.

Odessa American

Porterville Recorder Company

Seymour Tribune Company

The Times-News Publishing Company

Victor Valley Publishing Company

Daily Press

Victorville Publishing Company

Freedom Metro Information, Inc.

Orange County Register Communications,
Inc.

OCR Community Publications, Inc.

OCR Information Marketing, Inc.

The Register Charities, Inc.

The Register Campership Fund

Freedom Magazines, Inc.

Freedom Broadcasting, Inc.

Freedom Broadcasting of Florida Licensee,
L.L.C.

Freedom Broadcasting of Florida, Inc.

Freedom Broadcasting of Michigan
Licensee, L.L.C.

Freedom Broadcasting of Michigan, Inc.

Freedom Broadcasting of New York
Licensee, L.L.C.

Freedom Broadcasting of New York, Inc.

Freedom Broadcasting of Oregon Licensee,
L.L.C.

Freedom Broadcasting of Oregon, Inc.

Freedom Broadcasting of Southern New
England Licensee, L.L.C.

Freedom Broadcasting of Southern New
England, Inc.

Freedom Broadcasting of Tennessee
Licensee, L.L.C.

Freedom Broadcasting of Tennessee, Inc.

Freedom Broadcasting of Texas Licensee,
L.L.C.

Freedom Broadcasting of Texas, Inc.

Freedom Interactive Newspapers, Inc.

Freedom Interactive Newspapers of Texas,
Inc.

## 2. DBA'S (NEWSPAPERS/TV STATIONS)

ABC 53
Ahwatukee Foothills News
Aliso Viejo News
Anaheim Bulletin
Anaheim Hills News
Appeal-Democrat

Canyon Life
Capistrano Valley News
CBS News 12
Chandler Arizonan Tribune
Chandler Tribune
Clovis News Journal, Portales News-
     Tribune & Quay County Sun
Coast Kids
Coast Magazine
Colusa County Sun-Herald
Corning Observer
Costa Mesa Breeze
Crestview News Bulletin
Daily News-Sun
Daily Press
Dana Point News
Desert Dispatch
East Valley Tribune
El Extra
El Mojave
El Nuevo Heraldo
El Semanario
Excelsior
Freedom Media Enterprises
Fronteras
Fullerton News Tribune
Gilbert Tribune
Havelock News
Hesperia Star
Holmes County Times-Advertiser
Huntington Beach – North
Huntington Beach – South
Irvine World News
Jones Post
Journal-Courier
Juntos Los Viernes
KFDM Channel 6

KFDM-TV (CBS)
KTVL-TV (CBS)
La Habra/Brea Star Progress
La Habra Star
Laguna Beach Post
Laguna News-Post
Laguna Niguel News
Laguna Woods Globe
Mid-Valley Town Crier
Northwest Florida Daily News
Northwest Valley Commercial Printing
Northwest Valley News
Northwest Valley Newspaper
Noticiero Semanal
Ocottilo Tribune
Odessa American
Orange City News
Orange County Kids
Orange County Home
Orland Press-Register
Placentia News-Times
Preferred Destinations Magazine
Press Dispatch
Queen Creek Tribune
Rancho Santa Margarita News
Rosemead Independent
Saddleback Valley News
San Clemente Sun Post News
Santa Rosa Press Gazette & Santa Rosa
     Free Press – Shopper
Scottsdale Progress Tribune
Spirit-Times
Sun Journal
Sun Post News
Surprise Today
Temple Daily News Tribune
The Benton County Plainsman
The Apalachicola Times
The Brownsville Herald & El Nuevo
     Heraldo
The Carrabelle Times
The Current – East
The Current – West
The Daily News
The Destin Log & The Walton Sun
The Fountain Valley View
The Free Press

The Gaston Gazette
The Gazette
The Henry County Plainsman
The Johnson County Plainsman
The Ladera Post
The Leader
The Lima News
The Mesa Tribune
The Monitor & La Frontera
The Morgan County Plainsman
The News Herald
The Orange County Register
The Pettis County Plainsman
The Porterville Recorder
The Princeton Institute's Center for
    Clinical Management
The Putnam Voice
The Register
The Saline County Plainsman
The Scottsdale Tribune
The Sedalia Democrat
The Star
The Star
The Sun
The Sun Visitor
The Telegraph
The Tribune
The Tustin News
The Willows Journal
The Yuma Daily Sun
Times-News
Topsail Advertiser
Valley Morning Star & Padre Island
    Breeze
VanWert Voice
Washington County News
WCWN-TV (CW)
WLAJ-TV (ABC)
WPEC-TV (CBS)
WRBG Channel 6
WRGB-TV (CBS)
WTCV-News Channel 9
WTVC-TV (ABC)
WWMT3
WWMT-TV (CBS)
Yorba Linda Star

## 3.    DIRECTORS

Cory Arcarese
William F. Baker
Thomas W. Bassett
Marcy E. Bruskin
Raymond C. H. Bryan
Liz Cobb
Sherry Collins
Esteban Fernandez Davila
Larry Gray
Jill A. Greenthal
Robin J. Hardie
Terry Horne
Bobbie Hunt
Jennie Lambert
Mark A. McEachen
Burl Osborne
Chris Philibbosian
Jackie Saragueta
Jonathan Segal
James J. Spanfeller
Jeff Thomas
John H. Taylor
David M. Tolley
Nancy S. Trillo
Doreen D. Wade
Gregory J. Wallace
Kim Workman
Deb Zingales

## 4.    NON-DIRECTOR OFFICERS

Rachel L. Sagan
Douglas S. Bennett
Katherine Bartzoff
Lee Knapp
Greg Keirns
Skip Foster
Paul Mauney
Kent Kilpatrick
Michael H. Burns
Terri Nelson
Steven Pope
Dianne Ippolito

Olaf Frandsen
Karen E. Hanes
Julie Moreno
Dave Schmall
Tom C. Conner
Eric J. Thomason
Jennifer Butcher
Michelle Beckmann
Vernon DeBolt
Ray Sullivan
Tyler Patton
Daniel Cavazos
John Greider
James Shrader
Sergio Jaramillo Gomez
Lic. Juan Antonio Aguilar Ruiz
Lic. Juan Antonio Villarreal Gutierrez
Lic. Roman Cantu Acosta
James Shine
David Phillips
Patrick Canty
Mark Fazzone
Richard Davis
Stephen Wingert
Kenneth F. Brusic
Michael Henry
Richard Sant
Cathy Taylor
Tom Kelly
Lawrence Riley
William A. Rinchik
Brien Kennedy
James Lutton
Robert Furlong
Kingsley Kelley
Michael Costa
Larry Beaulieu

## 5.    FORMER DIRECTORS/OFFICERS

Michael J. Dominguez
Scott N. Flanders
Mark T. Gallogly
Mark J. Masiello
Garrett M. Moran

David D. Threshie
Richard A. Wallace

## 6.    PARENT STOCKHOLDERS (Holders of greater than 3% of the equity interests of Freedom Communications Holdings, Inc.)

Blackstone FC Communications
    Partners L.P.
Providence Equity Partners IV L.P.
Threshie, Ltd.
Blackstone FC Capital Partners IV L.P.
Robin J. Hardie Separate Property Trust
    (Robin J. Hardie, Trustee)
Douglas Raymond Hardie Separate
    Property Trust (Douglas R. Hardie
    and Janet Baker Hardie, Co-
    Trustees)
Patricia Hoiles Wallace Trust (Patricia
    Hoiles Wallace, Trustee)
Mary Elizabeth Bassett Revocable Trust
    (Mary Elizabeth Bassett, Trustee)

## 7.    SECURED LENDERS UNDER CREDIT AGREEMENT

40/86 Advisors
Aegon USA, Inc.
Debt Management, Limited
AIG Global Investment Corp., Inc.
Alcentra
Allied Irish Banks, P.L.C.
Allstate Investments LLC
American Express Asset Management
Ares Management LP
Babson Capital Management LLC
Bank of America, N.A.
Bank of Communications Co., Ltd.,
    New York Branch
Bank of the Sierra
Bank of the West
BB&T d/b/a Branch Banking and Trust

Bear Stearns Asset Management
Blackrock Group of Funds
BNP Paribas
Calyon
Capital One Bank
Carlyle High Yield
Centre Pacific
Citigroup Asset Management
City National Bank
Comerica Bank
Comerica West Incorporated
Credit Industriel et Commercial
Deerfield Capital Management LLC
Denali Capital
Desert Community Bank
Deutsche Bank AG
Deutsche Bank Trust Company
    Americas
East West Banking Corporation
Eaton Vance Management Inc.
EFT National Bank
Erste Group Bank AG
Fidelity Investments
First Federal Bank
First National Bank
Flagship Capital
Four Corners Capital Management
Franklin Advisors Inc.
General Electric Capital Corporation
Hamilton Floating Rate Fund
Hartford Investment Services Inc.
Highland Capital Management Co.
HIM MONEGY
Huntington National Bank
IBC d/b/a International Bank of
    Commerce
IKB Capital Corporation
ING Capital LLC
ING Investment Management LLC
ING Pilgrim
InterNational Bank
Invesco
Jacksonville Savings Bank
JPMorgan Chase Bank, N.A.
Katonah Capital
KBC Bank N.V.
KeyBank National Association

Lightpoint Capital Management LLC
Lyon Capital Management
Mellon Bank
Merrill Lynch Asset Management
Merrill Lynch Investment Managers
Metlife
MJX Asset Management, LLC
Morgan Stanley Bank, N.A.
M&T Bank
Natexis Banque Populaires
National City Bank
New York Life Investment Management
Nuveen Senior Income Fund
Pacific Investment Management
    Company
PB Capital Corporation
Protective Life Insurance Company
Prudential Insurance Co.
Putnam Investments
RABO-CLO
Royal Bank of Canada Capital
Royal Bank of Scotland plc.
Shenkman Capital
SMBC
Stanfield Capital Partners
Stone Tower Debt Advisors LLC
Sumitomo Mitsui Banking Corporation
SunAmerica Life Insurance Company
SunTrust Bank
Texas State Bank d/b/a/ Compass Bank
The Bank of New York Mellon
The Bank of Tokyo-Mitsubishi UFJ,
    Ltd.
The Royal Bank of Scotland
Trimaran Advisors LLC
Trust Company of the West
UBS AG
UFJ Bank Limited
US Bancorp
U.S. Bank National Association
Van Kampen
Wachovia Bank, N.A.
Webster Bank
Wells Capital Management
Wells Fargo
Western Asset Management
Western National Bank

Whitehorse Capital Partners, LP

## 8. BANKS AT WHICH ACCOUNTS ARE HELD (not including banks within secured bank group)

American State Bank
BB&T
Carrollton Bank
Coastal Community Bank
Texas State Bank d/b/a Compass Bank
First Community Bank of Colorado
First Community Bank of Texas
First Horizon National Corp.
First Tennessee Bank
Huntington National Bank
Indiana Bank and Trust
International Bancshares Corp.
Premier Bank
Regions Financial Corp.
TD Banknorth Inc.
Third National Bank of Sedalia
Union Bank, N.A. f/k/a Union Bank of California, N.A.
Western National Bank

## 9. PARTIES THAT FILED UCC STATEMENTS

Eastman Kodak Company
Kodak Polychrome Graphics LLC
Konica Minolta Graphic Imaging U.S.A., Inc.

## 10. SIGNIFICANT LITIGATION CLAIMANTS

Nelson Gonzalez
Reymundo Garcia
Aymer Avila
Julian Nunez
Juan Carlos Torres
Wilmington Trust Company
Rust Consulting, Inc.

Ruth Laney
Jay Feldman
Paula McDonald
Michael Castleman, Inc.
P/K Associates, Inc.
Gerald Posner
Miriam Raftery
Robert E. Treuhaft and Jessica L. Treuhaft Trust
Mary Ann Sherman
National Writers Union
Robin Vaughan
Moses Mims, Jr.
Charles Howell
Latin America Media Management, LLC
JKS-CMFV, LLC
Joyce Berry
Framestore
Charles Rubin d/b/a CalWestern, Inc.
Anaheim Chevrolet
Avalanche Mechanical, Inc.
Tiernet Publishing
Foto Classificados Magazine, Inc.
Seyfarth Shaw, LLC
Carlos Arrieta Moreno d/b/a Revista Paisano
Coach House Concerts San Juan, Inc.
GF Concerts, Inc.
James A. Prosser d/b/a Positive Changes Hypnosis
Maco Productions d/b/a Home Magazine
Great Women's Expo
Siems
Sands Media, Inc.
Mantra Entertainment
Automotive Marketing & Advertising, Inc.
A1 Carpet Care (Downey)
Pacific West Dermatology, a Medical Corp.
Greater Laguna Historical Group
Rolando M. Cano
Juan Antonio Coronado
Francisco Solis Ramirez
Rocha

Saenz
Hernandez
RGV-KMBH
Wood
Fauth
Augusta Ranch
Tommy Lamb
Prosperity Gardens
Steven Koch
Ramon
Rick Chapman
Valerie Kaan
Bill Lilly
Pompano Beach LLC
Bay Communities
John Moll
Katherine Moll
Hidden Image Entertainment
Joel Cooper
Yumasun.com
Sedalia News-Journal
Newporters for Ethical Government
Advanced Internet Concepts
PSPros
That's Great News
Orange County Varsity.rivals.com
Miles Aldridge
Freedom Communications.com
Tri-County
Coast Media Group
Art Pedroza
The Orange Juice Blog
Orange County Weekly
Village Voice Media Holdings, LLC
Crystal Decker
Mary Becchio
Rick D. Langley
Lyn Killian-Roseman
Rosalyn Curry
Phyllis Wagoner-Berry
Kathy Gibson
Lesley Brewer

King World Productions Inc.
AP Newspaper Services
CBS Television Network
General Newsprint Inc.
Infosys BPO Limited
Lindenmeyr Central
Fisher Printing Inc.
Vertis Inc.
Mercer
Central Ink Corporation
Texas Type Co/Div of GE Richards
    Graphic Sup
Linc Mechanical Services
Tower Consultants Inc.
Mexico Plastic Company
Michigan Dept. Of Treasury
U.S. Postal Service
Telerep LLC
Sedgwick CMS
Freedom Graphic – Ontario
Press One Customer Care Inc.
Trend Offset Printing Services Inc.
GE Richards Graphic
Warner Brothers Inc.
Associated Press Broadcast Services
Atex Inc.
Buena Vista Television
Pluck Corp.
Genesys Telecommunications Labs Inc.
Dialectric Communications
Pitman Company
The CW Network, LLC
Applied Computer Solutions
K Group Inc.
Gabriels Technology Solutions
Nielson Media Research Inc.
Mr. Clean Up Inc.
Systems Engineering Solutions LLC
Universal Forms Labels & Systems Inc.
Covington & Burling LLP
Loughlin Meghji & Co. Associates Inc.
Sheppard Mullin Richter & Hampton
    LLP
Raymab

## 11.  LARGE UNSECURED CREDITORS

Blue Cross Life and Health Insurance

## 12. PROFESSIONALS REPRESENTING DEBTORSS

AlixPartners LLP
Skadden, Arps, Slate, Meagher & Flom
    LLP
Theodora Oringher Miller & Richman
    PLC
Latham & Watkins LLP
Logan & Company, Inc.
Houlihan, Lokey, Howard & Zukin, Inc.
PricewaterhouseCoopers LLP
Young Conaway Stargatt & Taylor,
    LLP
Deloitte & Touche LLP
Sitrick and Company

## 13. PROFESSIONALS REPRESENTING OTHER PARTIES IN INTEREST

Cravath, Swaine & Moore LLP
Cohelan Khoury & Singer
Callahan & Blaine, PLC
Grant & Eisenhofer, PA
Kohn, Swift, & Graf, P.C.
Hoguet, Newman & Regal, L.L.P.

## 14. INSURANCE CARRIERS

Zurich
RLI
Ace
RSUI
Chubb Group of Insurance Companies
Arch
Inter-Aero (International Aerospace
    Insurance Services, Inc.)
St. Paul Travelers (St. Paul Fire &
    Marine Insurance Company /
    Travelers)
Columbia Casualty Company (CNA)
AIG
National Union Fire Insurance Co.
New Hampshire Insurance Co.
Commerce & Industry Insurance Co.

Illinois National Insurance Co.
BC Life & Health Insurance
St. Paul Fire & Marine Insurance
    Company
Executive Risk Indemnity Inc.
Liberty Mutual Fire Insurance
    Company
Federal Insurance Company
American Insurance Group
US Specialty Insurance Company
XL Specialty Insurance Company
Marsh

## 15. OTHER PARTIES

Internal Revenue Service
Federal Communications Commission
American Federation of Television and
    Radio Artists
National Association of Broadcast
    Employees and Technicians
International Brotherhood of Electrical
    Workers

# FREEDOM COMMUNICATIONS
## RELATIONSHIPS

**Corporate Finance**
Ares Management, LLC
Decker Outdoor Corporation
Deloitte & Touche, LLP
H. Koch & Sons
JPMorgan Chase Bank, N.A.
Providence Equity Partners
The Carlyle Group

**Financial Advisory Services**
Allstate Corporation
Ares Management Ltd
Black & Decker Corporation
Burns & McDonnell
Carlyle Industries, Inc.
City National Bank
Cole Taylor Bank
Covington & Burling
Cravath, Swaine & Moore, LLP
Credit Suisse Securities USA, LLC
Davis Reberkenny & Abramowitz
Deutsche Bank AG
Deutsche Bank Trust Company Americas
Excelsior Management Corporation
Ferris, Baker Watts, Inc.
Fidelity Investments
First National Bank of Newton
Freedom Newspapers, Inc.
Henry Mayo Newhall Memorial Hospital
Howard Rice Nemerovski Canady Falk & Rabkin
Internal Revenue Service
Journal Register Company
JPMorgan Chase Bank, N.A.
Latham & Watkins, LLP
Levcor International Inc
Loeb & Loeb, LLP
Merrill Lynch & Company, Inc.
MetLife
Pitman Company
PricewaterhouseCoopers, LLP
Providence Equity Partners, Ltd.
Register Publishing
Seyfarth Shaw LLP
Sheppard, Mullin, Richter & Hampton LLP
Skadden, Arps, Slate, Meagher & Flom, LLP

The Carlyle Group
The Post Register
Thomas Nelson
Wells Fargo
Wilmington Trust Company
Zurich US Specialties, Inc.

**Financial Restructuring – Creditor Advisory**
BlackRock, Inc.
BNP Paribas
Deutsche Bank AG
Latham & Watkins
Levantina y Asociados de Minerales S.A.
Skadden, Arps, Slate, Meagher & Flom, LLP
The Bank Of New York Mellon Corporation
US Bank National Association
Vertis, Inc.
Wells Fargo

**Financial Restructuring – Debtor Advisory**
Freedom Communications, Inc.