IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

REDACTED

| | |
|---|---|
| In re: | : Chapter 11 |
| | : |
| FREEDOM COMMUNICATIONS HOLDINGS, INC., et al.,[1] | : Case No. 09-13046 (BLS) |
| | : |
| | : (Jointly Administered) |
| Debtors. | : |
| | Related Docket No. 39 |
| | Requested Hearing Date: October 14, 2009 10:00 a.m. |

## MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR RECONSIDERATION OF INTERIM ORDER (I) AUTHORIZING USE OF PREPETITION LENDERS' CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION, AND (III) SCHEDULING FINAL HEARING

The Official Committee of Unsecured Creditors (the "Committee") of Freedom Communications Holdings, Inc. ("Freedom Holdings" or the "Company") and its affiliated chapter 11 debtors (collectively, the "Debtors"), by and through its undersigned counsel, respectfully submits this motion (the "Motion") pursuant to Rule 9024 of the Federal Rules of

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identifications numbers, are: Freedom Communications Holdings, Inc (2814); Freedom Communications, Inc. (0750); Freedom Broadcasting, Inc. (0025); Freedom Broadcasting of Florida, Inc. (6581); Freedom Broadcasting of Florida Licensee, LLC (1198); Freedom Broadcasting of Michigan, Inc. (6110); Freedom Broadcasting of Michigan Licensee, LLC (1122); Freedom Broadcasting of New York, Inc. (6522); Freedom Broadcasting of New York Licensee, LLC (9356); Freedom Broadcasting of Oregon, Inc. (7291); Freedom Broadcasting of Oregon Licensee, LLC (9295); Freedom Broadcasting of Southern New England, Inc. (7274); Freedom Broadcasting of Southern New England Licensee, LLC (1177); Freedom Broadcasting of Texas, Inc. (2093); Freedom Broadcasting of Texas Licensee, LLC (1147); Freedom Broadcasting of Tennessee, Inc. (7961); Freedom Broadcasting of Tennessee Licensee, LLC (9430); Freedom Magazines, Inc. (0328); Freedom Metro Information, Inc. (1604); Freedom Newspapers, Inc. (3240); Orange County Register Communications, Inc. (7980); OCR Community Publications, Inc. (9752); OCR Information Marketing, Inc. (7983); Appeal-Democrat, Inc. (4121); Florida Freedom Newspapers, Inc. (4227); Freedom Arizona Information, Inc. (5796); Freedom Colorado Information, Inc. (7806); Freedom Eastern North Carolina Communications, Inc. (5563); Freedom Newspapers of Illinois, Inc. (2222); Freedom Newspapers of Southwestern Arizona, Inc. (5797); Freedom Shelby Star, Inc. (8425); Illinois Freedom Newspapers, Inc. (8308); Missouri Freedom Newspapers, Inc. (8310); Odessa American (7714); The Times-News Publishing Company (0230); Victor Valley Publishing Company (6082); Daily Press (3610); Freedom Newspaper Acquisitions, Inc. (4322); The Clovis News-Journal (5820); Freedom Newspapers of New Mexico, LLC (5360); Gaston Gazette LLP (4885); Lima News (6918); Porterville Recorder Company (7735); Seymour Tribune Company (7550); Victorville Publishing Company (7617); Freedom Newspapers (7766); The Creative Spot, LLC (2420); Freedom Interactive Newspapers, Inc. (9343); Freedom Interactive Newspapers of Texas, Inc. (8187); Freedom Services, Inc. (3125). The address for Freedom Communications Holdings, Inc. and certain other Debtors is 17666 Fitch, Irvine, California 92614.

Bankruptcy Procedure (the "Bankruptcy Rules"), which incorporates Rule 60(b) of the Federal Rules of Civil Procedure (the "Federal Rules"), for reconsideration of the *Interim Order (I) Authorizing Use of Prepetition Lenders' Cash Collateral, (II) Granting Adequate Protection, and (III) Scheduling Final Hearing,* [Docket No. 39] (the "Interim Cash Collateral Order"). This pleading is also submitted in further support of the Committee's objection (the "Objection") to the entry of the final cash collateral order requested by the Cash Collateral Motion. In support of this Motion and the Objection, the Committee respectfully states as follows:

## PRELIMINARY STATEMENT

1. It is not unusual for a secured creditor who extends DIP financing to its borrower post-petition to receive commitment and other fees in connection with the financing. It is out of the ordinary, however, and perhaps unprecedented for a secured creditor who consents to the use of its cash collateral to receive any fees for giving such consent. Secured creditors often receive adequate protection payments, sometimes in an amount equal to accruing interest on the debt, and on rare occasions even receive payment of pre-petition interest if they are oversecured, but we are not aware of any case in which the Court approved the payment of fees to a secured creditor in the nature of a commitment fee as part of a consensual use of cash collateral, especially an undersecured creditor.

2. The payment of any material fees to a secured creditor in connection with DIP financing or use of cash collateral must be disclosed to the Court in the approval motion. Bankruptcy Rule 4001(b) and(c) require that a motion for approval of proposed cash collateral use or DIP financing, respectively, must disclose all of the "material provisions" and "material terms" of such cash collateral use or DIP financing. Similarly, Delaware Local Rule 4001-2(a)(ii) requires that the motion provide a summary of "of the essential terms of the proposed use



of cash collateral and/or financing (*e.g.*, the maximum borrowing available on a final basis, the interim borrowing limit, borrowing conditions, interest rate, maturity, events of default, use of funds limitations and protections afforded under 11 U.S.C. §§ 363 and 364)."

3. The Committee respectfully submits that these Rules were violated in these cases, as the evidence at the hearing will show that substantial fees were paid to J.P. Morgan Chase Bank, N.A. ("JP Morgan"), the agent bank for the Prepetition Lender[2] syndicate, but were not disclosed to the Court. Indeed, the evidence uncovered by the Committee in pre-trial discovery conducted in connection with contesting the Cash Collateral Motion on a final basis revealed that in the week before the bankruptcy filing, the Debtors and JP Morgan entered into undisclosed agreements requiring the Debtors to pay JP Morgan immediately prepetition a total of ▓▓▓ in fees, consisting of (1) ▓▓▓ denominated as a "work fee," and (2) ▓▓▓ denominated as an "arrangement fee."

4. These fees were in fact paid by the Debtors to JP Morgan, as the ▓▓▓ "work fee" was paid on August 28, 2009, and the ▓▓▓ "arrangement fee" was paid *on the Petition Date itself.* But at no time were these material payments disclosed to the Court, the United States Trustee, or any other party in interest. The evidence will further show that the ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ their nondisclosure in advance of the hearing on interim approval of the cash collateral arrangement.

5. The Committee respectfully submits that under the circumstances of these cases, the Bankruptcy Rules and Local Rules as well as candor with the Court required the Debtors and JP Morgan to disclose the ▇▇▇ so-called "work fee" paid to JP Morgan on August 28, 2009 and the ▇▇▇ so-called "arrangement fee" paid to JP Morgan on the Petition Date itself, presumably in the hours before the petition was filed.[3] As shown below, these facts and circumstances establish grounds for reconsideration of this Court's Interim Cash Collateral Order entered on September 2, 2009 under Rule 60(b)(2), (3) and (6), made applicable to this matter pursuant to Bankruptcy Rule 9024, on grounds of newly-discovered evidence, fraud, misrepresentation or the misconduct of an adverse party and other reasons justifying relief, including the violation of the Bankruptcy Rules and Local Rules.

6. Based on the Debtors' failure to disclose all material terms of the use of cash collateral, specifically the payment of ▇▇▇ in fees to JP Morgan, and JP Morgan's complicity and encouragement in this material non-disclosure, by this Motion, the Committee hereby requests reconsideration and vacatur of the Interim Cash Collateral Order, including the revocation of the "good faith" finding made in that Order, pursuant to section 363(m), the disgorgement of all pre-petition interest, post-petition interest and fees paid to JP Morgan, as well as the nullification *nunc pro tunc* of any adequate protection liens granted under such Order. The Committee respectfully submits that no less a sanction is warranted to address the Debtors'

---

[3] As will be shown at the hearing, these self-serving labels do not mask the fact that these fees were essential and material terms of the cash collateral usage, which is expressly authorized by the Plan Support Agreement. ▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. Yet remarkably neither the Debtors nor JP Morgan thought it appropriate to disclose these payments.



and JP Morgan's deliberate lack of candor with the Court and parties in interest with regard to these undisclosed fee payments.

## JURISDICTION

7.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b). Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## FACTUAL BACKGROUND

### A. General Background

8.  On September 1, 2009 (the "Petition Date"), the Debtors filed voluntary petitions in this Court for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware.

9.  Also on the Petition Date, the Debtors filed their *Motion (I) Authorizing Use of Prepetition Lenders' Cash Collateral, (II) Granting Adequate Protection, and (III) Scheduling Final Hearing* [Docket No. 14] (the "Cash Collateral Motion") and the *Declaration of Mark M. McEachen, Senior Vice President and Chief Financial Officer of Freedom Communications Holdings, Inc., in Support of Chapter 11 Petitions and First Day Pleadings* [Docket No. 2] ("McEachen Declaration"). Neither the Cash Collateral Motion nor the McEachen Declaration disclose the ▓▓▓▓▓ in payments on August 28, 2009 and the Petition Date, which are the subject of this Motion.

10. On September 2, 2009, the Court entered the Interim Cash Collateral Order. Among other things, that order authorized the Debtors to make payments to JP Morgan of accrued pre-petition interest and post-petition interest, as well as its professional fees. The Interim Cash Collateral Order contained a finding in paragraph 6(c) that JP Morgan and the Prepetition Lenders acted in "good faith" and a determination in paragraph 17(c) that JP Morgan



and the Prepetition Lenders "shall be entitled to all the rights, remedies, privileges and benefits granted in section 363(m) of the Bankruptcy Code and this Order with respect to all uses of Cash Collateral and Adequate Protection Obligations."[4]

## B. The Pre-Petition Fee Payments Made to JP Morgan

11. The Cash Collateral Motion states that Debtors' primary financial obligations are under the Credit Agreement dated as of May 18, 2004, among Freedom Holdings, Freedom Communications as borrower, JP Morgan, as administrative agent, and the Prepetition Lenders, and that as of the Petition Date, the indebtedness owing under the Credit Agreement was approximately $770.6 million. The Debtors are on record in prior pleadings as contending that JP Morgan is undersecured.

12. As will be shown at the hearing on the Cash Collateral Motion and this Motion, on April 29, 2009, the Debtors, JP Morgan and the Prepetition Lenders amended the Credit Agreement by entering into the Amendment No. 4, Waiver and Agreement (the "April 29 Amendment"). Under the April 29 Amendment, in exchange for fees, an interest rate increase, accelerated amortization payments, revolver repayment and permanent reduction, and entry into control agreements with respect to certain of the Debtors' accounts, JP Morgan and the Prepetition Lenders granted the Debtors a temporary waiver of the defaults through December 31, 2009, unless earlier terminated. In connection with the April 29 Amendment, JP Morgan requested and was paid ████████████████████.

13. Thereafter, in the months leading to the Petition Date, the Debtors, JP Morgan and a majority of the Prepetition Lender negotiated the Plan Support Agreement, the

---

[4] Upon learning that the fee payments had been made, by email dated October 9, 2009, the Committee advised JP Morgan and the Debtors of its intention to file a motion for reconsideration of the Interim Cash Collateral Order, and demanded that the Debtors make no further payments of principal, interest or fees to JP Morgan under the Interim Cash Collateral Order pending the adjudication of this Motion.


**REDACTED**

Plan Term Sheet, and the proposed consensual cash collateral agreement annexed to the Plan Support Agreement as exhibits.

14. In or about mid-August of 2009, as the Debtors were preparing their bankruptcy filings, JP Morgan requested the payment of ▮▮▮▮▮ in additional fees, denominated as a ▮▮▮▮▮ "work fee" and ▮▮▮▮▮ "arrangement fee."

15. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

16. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

17. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮





18. [REDACTED]

(as required by Bankruptcy Rule 4001(b) and Delaware Local Rule 4001-2(a)(ii)).[5] It is beyond question, given the timing of the payments and the surrounding circumstances, that JP Morgan required the payment of these fees to proceed with the case and the Plan Support Agreement, including the consensual cash collateral use as provided for in the Plan Support Agreement "arranged" by JP Morgan. Accordingly, their disclosure was mandated under the Bankruptcy Rules and Local Rules.

---

[5] Undoubtedly, [REDACTED] in payments will have to be disclosed in the Debtors' Statement of Financial Affairs, which requires disclosure of all payments made within 90 days of the Petition Date, [REDACTED] Because of the materiality of the [REDACTED] payments, the Debtors could not wait until they file their schedules and statements (which are on extension until the end of October) because to do so would conceal the existence of the [REDACTED] the payments until after final approval of the Cash Collateral Motion. Viewed in this light, the Debtors' motion for extension of time to file their schedules and statements takes on a more troubling appearance than a mere ministerial motion.

19. As contemplated by the ████████, on August 28, 2009, the Debtors paid JP Morgan the ████████ "work fee" and on the Petition Date, September 1, 2009, the Debtors paid JP Morgan the ████████ "arrangement fee." As indicated above, these fee payments were not disclosed in the Cash Collateral Motion or the McEachen Declaration. Further, a review of the transcript of the first day hearings conducted by Judge Carey on September 2, 2009 reflects that the fee payments were not disclosed to the Court at the hearing. Nor does it appear that the Debtors advised the Office of the Unites Trustee of these payments in advance of the September 2, 2009 hearing on the Interim Cash Collateral Order.

## REQUESTED RELIEF

20. Pursuant to Rule 60(b) of the Federal Rules, made applicable to this proceeding by Bankruptcy Rule 9024, the Committee respectfully requests that the Court (1) reconsider and vacate the Interim Cash Collateral Order, (2) order the disgorgement of any pre-petition interest, post-petition interest, professional fees or other payments made to JP Morgan pursuant to the Cash Collateral Motion, (3) nullify *nunc pro tunct* all adequate protection liens granted to JP Morgan and the Prepetition Lenders. Separately, for the reasons set forth in the Objection and this Motion, the Committee respectfully requests that the Court decline to enter the proposed Final Cash Collateral Order and otherwise deny the relief requested in the Cash Collateral Motion.

21. This Motion is being made on an expedited basis (as set forth in a motion to shorten time filed concurrently herewith) based on the following: (1) the Debtors failed to provide the Committee and other parties-in-interest with material information as required by Bankruptcy Rule 4001(b)(1)(B) and Local Rule 4001-2(a)(ii); (2) the Committee and other parties-in-interest did not have any opportunity to object to the Debtors' Cash Collateral Motion

with the benefit of having this information; and (3) a hearing on an expedited basis would allow this Motion to be heard simultaneously with the upcoming hearing on approval of the Cash Collateral Motion on a final basis scheduled for October 14, 2009.

## BASIS FOR RELIEF

### A. Reconsideration and Vacatur of the Interim Cash Collateral Order is Appropriate

22. It is well established that bankruptcy courts, as courts of equity, have the discretion to reconsider, vacate, or modify their prior orders. Bankruptcy Rule 9024, which incorporates Federal Rule 60(b), authorizes bankruptcy courts to vacate or modify prior orders based on several grounds. Rule 60(b) provides, in pertinent part:

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons:
>
> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) *newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b);*
> (3) *fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party;*
> (4) the judgment is void;
> (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been revered or other vacated, or it is no longer equitable that the judgment should have prospective application; or
> (6) any other reason justifying relief from the operation of the judgment.

(emphasis supplied). The Third Circuit has emphasized that: "[t]t is well settled that a bankruptcy court has the power to vacate or modify its orders, as long as it is equitable to do so." *In re Marcus Hook Development Park, Inc.*, 943 F.2d 261, 265 (3d Cir. 1991) (citations omitted).

23. Relief under Federal Rule 60(b) requires a showing of exceptional circumstances and where, "absent such relief, an 'extreme' and 'unexpected hardship' will

result." *Mayberry v. Maroney*, 558 F.2d 1159, 1163 (3d Cir. 1977) (citations omitted). "However, Bankruptcy Courts may exercise more liberally its power to vacate orders granted under Rule 60(b)(6) if it is necessary to 'accomplish justice' or to deal with 'unforeseen contingencies.'" *In re Durkalec*, 21 B.R. 618, 620 (Bankr. E. D. Pa. 1982). Here, vacatur of the Interim Cash Collateral Order pursuant to Bankruptcy Rule 9024 and Federal Rule 60(b), including disgorgement and nullification of the adequate protection liens granted to JP Morgan and the Prepetition Lenders, is necessary and appropriate to address the Debtors' and JP Morgan's violation of the Bankruptcy Rules and the Local Rules and their ongoing effort to conceal material payments made just before and on the Petition Date.

24. Bankruptcy Rule 9024 "may be liberally construed to do substantial justice to allow parties to air meritorious claims in the absence of fault or prejudice." *In re Kirwan*, 164 F.3d 1175, 1177 (8th Cir. 1999).

25. On this Motion, the Committee has invoked the provisions of Federal Rule 60(b)(2), on the ground that ████████████████████████████████ is "newly discovered evidence," as well as the provisions of Rule 60(b)(3), based on fraud, misrepresentation, or misconduct by an opposing party, and Rule 60(b)(6), which authorizes relief from orders based on "any other reason justifying relief from the operation of the judgment."

26. To obtain relief under Rule 60(b)(2), the movant must demonstrate the existence of newly-discovered evidence that would have been relevant to the Court in considering whether or not to enter the order in question. "A party is entitled to new trial only if such evidence is (1) material and not merely cumulative, (2) could not have been discovered prior to trial through the exercise of reasonable diligence, and (3) would probably have changed



the outcome of the trial." *Bohus v. Beloff,* 950 F.2d 919, 930 (3d Cir. 1991) (citing *Stridiron v. Stridiron,* 698 F.2d 204, 208 (3d Cir. 1983)). Clearly, the fact of the payment ▓▓▓▓ in fees to JP Morgan is a material fact first discovered by the Committee after entry of the Interim Cash Collateral Order. The Committee respectfully submits that these covert payments were sufficiently large that if they were disclosed to the Court and the Office of the United States Trustee, their views of the propriety of the relief sought by the Cash Collateral Motion for the benefit of JP Morgan and the Prepetition Lenders may well have been affected.

27. To obtain relief under Rule 60(b)(3) based on fraud or misrepresentation, the movant must demonstrate such misconduct by clear and convincing evidence, *Brown v. Pennsylvania R.R. Co.,* 282 F.2d 522 (3d Cir. 1960), as the Committee will do at the hearing on this Motion. Second, the movant "must establish that the adverse party engaged in fraud or other misconduct, and that this conduct prevented the moving party from fully and fairly presenting his case." *Stridiron v. Stridiron,* 698 F.2d at 207. Courts have sustained Rule 60(b)(3) motions on grounds of misconduct in cases where the party's actions did not necessarily rise to the level of fraud and where the party's actions were related to filing a motion or obtaining an order. *See e.g., Anderson v. Cryovac, Inc.,* 862 F.2d 910 (1st Cir. 1988) ("Failure to disclose or produce materials requested in discovery can constitute "misconduct" within the purview of [Rule 60(b)(3)]") (citing *Rozier v. Ford Motor Co.,* 573 F.2d 1332, 1339 (5th Cir. 1978)); *Lonsdorf v. Seefeldt,* 47 F.3d 893, 897 (7th Cir. 1995) ("Rule 60(b)(3) applies to both intentional and unintentional misrepresentations"); *In re Wayne Manor, Inc.,* 117 B.R. 12, 14 (D. Mass. 1990) (finding misconduct under Rule 60(b)(3) where plaintiff was guilty of "something approaching deceit" in concealing its knowledge, that it had well before its motion was filed, that the amount it was claiming was incorrect); *In re Duro Industries, Inc.,* 293 B.R. 271, 280 (B.A.P. 1st Cir.

2003) (vacating order under Rule 60(b)(3) where financing order was obtained under "if not false pretenses, at least a misunderstanding as to the scope of the . . . marketing efforts to which [the parties] had in effect committed themselves").

28. Finally, Rule 60(b)(6) provides that relief may be granted for "any other reason justifying relief from the operation of the judgment." Fed. R. Civ. P. 60(b)(6). Rule 60(b)(6) does not particularize the factors that justify relief, but the Supreme Court has noted that it provides courts with authority "adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice." *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 864, 108 S. Ct. 2194, 2204 (1988) (quoting *Klapprott v. U.S.*, 335 U.S. 601, 614-15, 69 S. Ct. 384, 390 (1949)). As an independent ground for reconsideration under Federal Rule 60(b)(6), the Committee asks that the Court reconsider the Interim Cash Collateral Order to address the Debtors' and JP Morgan's violation of Bankruptcy Rule 4001(a) and Delaware Local Rule 4001-2(a)(ii) based on the failure to disclose all of the material terms of the consensual cash collateral arrangement. Given the great importance of the matters in these chapter 11 cases that are to be dictated by the terms and conditions of a cash collateral arrangement, Bankruptcy Rule 4001(b)(1)(B) and Local Rule 4001-2(a)(ii) mandate that parties in interest are entitled to full disclosure of all material terms, cash payments, or other adequate protection that was or will be provided to each entity with an interest in the cash collateral.

29. Procedural rules such as Bankruptcy Rule 4001(b)(1)(B) and Local Rule 4001-2(a)(ii) are promulgated to protect the substantive rights of the parties. Compliance with these procedural requirements are important because they serve to protect the substantive rights of the parties. *See In re Chanticleer Associates*, 592 F.2d 70 (2d Cir. 1979). Here, parties in interest and the Court were entitled to a full and fair opportunity to review the actual and



material terms behind the cash collateral arrangement, as well as all the other surrounding facts and circumstances, to ascertain whether the relief sought is in fact warranted, and otherwise to ensure that the Debtors fulfill their fiduciary duty to maximize the value of the estates for the benefit of all unsecured creditors. *See In re Ames Dept. Stores, Inc.*, 115 B.R. 34, 38-39 (Bankr. S.D.N.Y. 1990). Parties in interest and the Court were denied this opportunity here, as the Debtors failed to disclose any payments made to JP Morgan on the eve of the bankruptcy filing. The entry of the Interim Cash Collateral Order without such disclosure in compliance with Bankruptcy Rule 4001(b)(1)(B) and Local Rule 4001-2(a)(ii) mandates the vacatur of the Interim Cash Collateral Order.

30. For the foregoing reasons, the Committee respectfully submits that it has established grounds for reconsideration of the Interim Cash Collateral Order.

B. **The Lenders Are Not Entitled to a "Good Faith" Finding**

31. The Committee submits that JP Morgan and the Prepetition Lenders are not entitled to the protections of section 363(m), the finding in the Interim Cash Collateral Order notwithstanding, because ▮▮▮▮▮▮▮▮▮▮, material facts were not disclosed to the Court or parties in interest. The absence of "good faith" on JP Morgan's part is manifest. JP Morgan extracted ▮▮▮▮▮ in fees on the eve of the bankruptcy filings and ▮▮▮▮▮ the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ t grave doubt on JP Morgan's *bona fides*, and is sufficient to negate any finding that it acted in good faith and is entitled to the protections of section 363(m) on this Motion.

## CONCLUSION

The Debtors have granted the Lenders wide ranging and unsupported relief in exchange for the interim use of cash collateral. Had the Debtors made all relevant disclosures in

connection with their Cash Collateral Motion, it is quite conceivable that the US. Trustee and the Court would have considered the ▓▓▓▓ in payments in considering the requested relief, and may have reached different conclusions. Accordingly, the Committee respectfully requests that the Court (i) reconsider the Interim Cash Collateral Order, (ii) vacate the Order, (iii) order the

disgorgement of all payments to JP Morgan and the Prepetition Lenders made pursuant to the Interim Cash Collateral Order, (iv) nullify all adequate protection liens granted thereunder, (v) deny the Cash Collateral Motion on a final basis, and (vi) grant such other and further relief as the Court deems just and proper.

Dated: October 12, 2009

PACHULSKI STANG ZIEHL & JONES LLP

/s/ 

Robert J. Feinstein (NY Bar No. RF-2836)
Bruce Grohsgal (DE Bar No. 3583)
Alan J. Kornfeld (CA Bar No. 130063)
Beth E. Levine (NY Bar No. BL-6715)
919 N. Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email: rfeinstein@pszjlaw.com
 bgrohsgal@pszjlaw.com
 akornfeld@pszjlaw.com
 blevine@pszjlaw.com

[Proposed] Counsel to the Committee of Unsecured Creditors for Freedom Communications Holdings, Inc. et al.