IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------ x
In re:                                                      :  Chapter 11
                                                            :
FREEDOM COMMUNICATIONS HOLDINGS,                            :  Case No. 09-13046 (BLS)
INC., et al.,                                               :
                                                            :  Jointly Administered
                    Debtors.[1]                             :
                                                            :  Docket Ref. No. 1038
------------------------------------------------------------ x

**ORDER UNDER SECTIONS 105(a), 363 AND 365 OF THE BANKRUPTCY CODE, BANKRUPTCY RULES 2002, 6004 AND 6006 AND LOCAL BANKRUPTCY RULE 6004-1 (I) AUTHORIZING THE SALE OF CERTAIN ASSETS OF FREEDOM ARIZONA INFORMATION, INC. TO 1013 COMMUNICATIONS, LLC, FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS, SUBJECT TO HIGHER AND BETTER BIDS; (II) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (III) AUTHORIZING THE REJECTION OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES AS OF THE DATE THE SALE IS CLOSED; (IV) AUTHORIZING PAYMENT OF COMMISSION AND EXPENSE REIMBURSEMENT TO DIRKS, VAN ESSEN & MURRAY ON A FINAL BASIS; AND (V) GRANTING RELATED RELIEF**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: Freedom Communications Holdings, Inc. (2814); Freedom Communications, Inc. (0750); Freedom Broadcasting, Inc. (0025); Freedom Broadcasting of Florida, Inc. (6581); Freedom Broadcasting of Florida Licensee, L.L.C. (1198); Freedom Broadcasting of Michigan, Inc. (6110); Freedom Broadcasting of Michigan Licensee, L.L.C. (1122); Freedom Broadcasting of New York, Inc. (6522); Freedom Broadcasting of New York Licensee, L.L.C. (9356); Freedom Broadcasting of Oregon, Inc. (7291); Freedom Broadcasting of Oregon Licensee, L.L.C. (9295); Freedom Broadcasting of Southern New England, Inc. (7274); Freedom Broadcasting of Southern New England Licensee, L.L.C. (1177); Freedom Broadcasting of Texas, Inc. (2093); Freedom Broadcasting of Texas Licensee, L.L.C. (1147); Freedom Broadcasting of Tennessee, Inc. (7961); Freedom Broadcasting of Tennessee Licensee, L.L.C. (9430); Freedom Magazines, Inc. (0328); Freedom Metro Information, Inc. (1604); Freedom Newspapers, Inc. (3240); Orange County Register Communications, Inc. (7980); OCR Community Publications, Inc. (9752); OCR Information Marketing, Inc. (7983); Appeal-Democrat, Inc. (4121); Florida Freedom Newspapers, Inc. (4227); The Seller Information, Inc. (5796); Freedom Colorado Information, Inc. (7806); Freedom Eastern North Carolina Communications, Inc. (5563); Freedom Newspapers of Illinois, Inc. (2222); Freedom Newspapers of Southwestern Arizona, Inc. (5797); Freedom Shelby Star, Inc. (8425); Illinois Freedom Newspapers, Inc. (8308); Missouri Freedom Newspapers, Inc. (8310); Odessa American (7714); The Times-News Publishing Company (0230); Victor Valley Publishing Company (6082); Daily Press (3610); Freedom Newspaper Acquisitions, Inc. (4322); The Clovis News-Journal (5820); Freedom Newspapers of New Mexico L.L.C. (5360); Gaston Gazette LLP (4885); Lima News (6918); Porterville Recorder Company (7735); Seymour Tribune Company (7550); Victorville Publishing Company (7617); Freedom Newspapers (7766); The Creative Spot, L.L.C. (2420); Freedom Interactive Newspapers, Inc. (9343); Freedom Interactive Newspapers of Texas, Inc. (8187); Freedom Services, Inc. (3125). The address for Freedom Communications Holdings, Inc. and certain other Debtors is 17666 Fitch, Irvine, California 92614.

Upon consideration of the motion (the "Motion") [2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), pursuant to Bankruptcy Code sections 105(a), 363 and 365, Bankruptcy Rules 2002, 6004 and 6006 and Local Rule 6004-1 for entry of an order (i) authorizing the sale of certain assets of Freedom Arizona information, Inc. (the "Seller") to 1013 Communications, LLC (the "Buyer"), free and clear of liens, claims, encumbrances and other interests (other than the liabilities and obligations assumed by the Buyer pursuant to the Asset Purchase Agreement), subject to higher and better bids; (ii) authorizing the assumption and assignment of the Assigned Contracts; (iii) authorizing the rejection of the Rejected Contracts as of the Sale Closing Date; (iv) authorizing payment of a commission in the amount of $91,500 and expense reimbursements in the amount of $1,094.58 to DV&M on a final basis; and (v) granting related relief; and the Court having entered an order on March 5, 2010 directing the United States Trustee to appoint a consumer privacy ombudsperson pursuant to Bankruptcy Code section 322(a) [Docket. No. 1123]; and the United States Trustee having appointed Alan Chapell (the "Ombudsman") as the consumer privacy ombudsman by notice dated March 8, 2010 [Docket No. 1133]; and the Ombudsman having filed a report with this Court (the "Ombudsman's Report"), recommending that this Court approve the transfer of consumer personally identifiable information to the Buyer, subject to certain conditions and limitations set forth in the Ombudsman's Report; and the Court having reviewed the Motion, the Asset Purchase Agreement and the Ombudsman's Report; and the Court having determined that the relief requested in the Motion is in the best interests of the Debtors, their estates, creditors and other parties-in-interest; and due and adequate notice of the Motion having been given under the circumstances; and all objections to the Motion having been withdrawn, resolved or overruled on their merits; and upon the remainder of the

---

[2] All capitalized terms included but not defined herein shall have the meaning ascribed to such terms in the Motion.

record herein; and after due deliberation thereon, and good and sufficient cause appearing therefor, it is hereby

**FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

A. The Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of these cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

B. Due and adequate notice of the Motion, the Asset Purchase Agreement, the hearing, and the subject matter thereof has been provided to all parties-in-interest herein, and no other or further notice is necessary. A reasonable opportunity to object or be heard with respect to the Motion and the relief requested therein has been afforded to all interested persons and entities.

C. Granting the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties-in-interest. The Debtors have demonstrated good, sufficient, and sound business purposes and justifications for the relief requested in the Motion.

D. The Asset Purchase Agreement was negotiated and proposed, and has been entered into by the parties, in good faith, from arms-length bargaining positions, and without collusion. The Buyer is a good faith purchaser within the meaning of Bankruptcy Code section 363(m) and is entitled to the protection thereof.

E. Neither the Debtors nor the Buyer have engaged in any conduct that would cause or permit the Asset Purchase Agreement, or the sale of the Purchased Business Assets and the Purchased Real Property pursuant thereto and hereto, to be avoided under Bankruptcy Code section 363(n).

F. Under the circumstances, and due and adequate notice having been provided, it is the best interests of the Debtors, their creditors, and all other parties-in-interest herein that the

Purchased Business Assets and the Purchased Real Property be sold to the Buyer in accordance with the terms of the Asset Purchase Agreement under Bankruptcy Code section 363(b) and Bankruptcy Rules 2002(c)(1) and 6004(f)(1) and that the Assigned Contracts be assumed by the Debtors and assigned to the Buyer pursuant to Bankruptcy Code section 365. The sale process described in the Motion is reasonable and appropriate under the circumstances.

G. The consideration provided by the Buyer for the Purchased Business Assets and the Purchased Real Property pursuant to the Asset Purchase Agreement (i) is fair and reasonable, (ii) is the highest and best offer for the Purchased Business Assets and the Purchased Real Property, (iii) will provide a greater recovery for the Debtors' creditors than would be provided by any other available alternative, and (iv) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States and any state, territory or possession thereof.

H. The Debtors are authorized to sell the Purchased Business Assets and the Purchased Real Property free and clear of all interests of any kind or nature whatsoever, except as set forth in the Asset Purchase Agreement, because one or more of the standards set forth in Bankruptcy Code section 363(f)(1)-(5) have been satisfied. Those holders of interests who did not object to the Motion or the relief requested therein, or who imposed and then withdrew their objections, are deemed to have consented to the sale pursuant to Bankruptcy Code section 363(f)(2). Those holders of interests who did object fall within one or more of the other subsections of Bankruptcy Code section 363(f) and are adequately protected by having their Liens, Claims, Encumbrances and Interests (as defined below), if any, attach to the proceeds of the sale of the Purchased Business Assets and the Purchased Real Property ultimately attributable to the property against or

in which they claim or may claim any Claims, Encumbrances and Interests, with such Claims, Encumbrances and Interests being subject to treatment by separate order of this Bankruptcy Court

I. Except as otherwise provided in the Asset Purchase Agreement, the Purchased Business Assets and the Purchased Real Property shall be sold free and clear of all claims, mortgages, restrictions, hypothecations, charges, indentures, loan agreements, instruments, leases, licenses, options, deeds of trust, security interests, conditional sale or other title retention agreements, pledges, liens (including, without limitation, mechanics', materialmens' and other consensual and non-consensual liens and statutory liens), judgments, demands, encumbrances, rights of first refusal, offsets, contracts, recoupment, rights of recovery, claims for reimbursement, contribution, indemnity, exoneration, products liability, alter-ego, environmental, pension or tax, decrees of any court or foreign or domestic governmental entity, or charges of any kind or nature, if any, including, but not limited to, any restriction on the use, voting, transfer, receipt of income or other exercise of any attributes of ownership, debts arising in any way in connection with any agreements, acts, or failures to act, of the Debtors or the Debtors' predecessors or affiliates, claims (as that term is used in the Bankruptcy Code), reclamation claims, obligations, liabilities, demands, guaranties, options, rights, contractual or other commitments, restrictions, interests and matters of any kind and nature, whether known or unknown, choate or inchoate, filed or unfilled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, whether arising prior to or subsequent to the commencement of the bankruptcy case, and whether imposed by agreement, understanding, law, equity or otherwise, including claims otherwise arising under doctrines of successor liability (collectively, "Liens, Claims, Encumbrances and Interests").

J. The transfer of the Purchased Business Assets and the Purchased Real Property to the Buyer is a legal, valid and effective transfer of the Purchased Business Assets and the Purchased Real Property, and, except as may otherwise be provided in the Asset Purchase Agreement, shall vest the Buyer with all right, title and interest of the Debtors to the Purchased Business Assets and the Purchased Real Property free and clear of any and all Liens, Claims, Encumbrances and Interests. Except as specifically provided in the Asset Purchase Agreement or this Order, the Buyer shall not assume or become liable for any Liens, Claims, Encumbrances and Interests relating to the Purchased Business Assets and the Purchased Real Property.

K. The transfer of the Purchased Business Assets and the Purchased Real Property to the Buyer free and clear of all Liens, Claims, Encumbrances and Interests, except as otherwise provided in the Asset Purchase Agreement, will not result in any undue burden or prejudice to any holders of any Liens, Claims, Encumbrances and Interests as all such Liens, Claims, Encumbrances and Interests of any kind or nature whatsoever shall attach to the net proceeds of the sale of the Purchased Business Assets and the Purchased Real Property received by the Debtors in the order of their priority, with the same validity, force and effect which they now have as against the Purchased Business Assets and the Purchased Real Property and subject to any claims and defenses the Debtors or other parties may possess with respect thereto. Except as otherwise provided in the Asset Purchase Agreement, all persons having Liens, Claims, Encumbrances or Interests of any kind or nature whatsoever against or in any of the Debtors or the Purchased Business Assets and the Purchased Real Property shall be forever barred, estopped and permanently enjoined from pursuing or asserting such Liens, Claims, Encumbrances or Interests against the Buyer, any of their assets, property, successors or assigns, or the Purchased Business Assets and the Purchased Real Property.

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1. The Motion is granted.

2. All objections and responses to the Motion or relief provided herein that have not been withdrawn, waived or settled, are hereby overruled and denied on the merits.

3. Pursuant to Bankruptcy Code sections 105, 363 and 365, the Debtors are hereby authorized to enter into the Asset Purchase Agreement and to sell, transfer, and convey the Purchased Business Assets and the Purchased Real Property to the Buyer, free and clear of all Liens, Claims, Encumbrances and Interests relating to the Purchased Business Assets and the Purchased Real Property, except as set forth in the Asset Purchase Agreement. Such transfer shall constitute a legal, valid, binding and effective transfer of the Purchased Business Assets and the Purchased Real Property.

4. The transfer of all consumer personally identifiable information, as that term is defined in the Bankruptcy Code ("PII"), from the Debtors to the Buyer is hereby approved; *provided, however*, that such transfer is conditioned upon the Buyer being a "Qualified Buyer," meaning an entity that: (a) concentrates in the same business and market as the Debtors; (b) agrees to be the Debtors' successor-in-interest as to PII; (c) agrees to be responsible for any violation of the Debtors' applicable privacy policies following the Sale Closing Date; and (d) shall not disclose, sell, or transfer customers' PII to any third party (including other consumer brands controlled and/or owned, in whole or in part, by the Buyer) in a manner inconsistent with the Debtors' applicable privacy policies without obtaining each consumer's prior affirmative ("opt-in") consent; *provided, further*, that the Buyer agrees to be bound by and meet the standards established by the Debtors' applicable privacy policies, including but not limited to honoring any opt-out requests submitted by customers. The Debtors and/or the Buyer shall provide notice to all consumers

7

whose PII is being transferred from the Debtors to the Buyer, via one electronic mail message that is sent to each applicable consumer's email addresses in the Debtors' possession. As part of this notification process, the Debtors and/or the Buyer shall provide consumers with an opportunity to opt-out of any future use of their PII. The Buyer shall file with the Court a statement under oath that it has fully complied with the conditions imposed in this decretal paragraph, or the Ombudsman shall file a supplemental report confirming such compliance by the Buyer.

5. Pursuant to Bankruptcy Code section 363(b), the Debtors and the Buyer, as well as their officers, employees, and agents, shall be, and hereby are, authorized to take any and all actions and/or execute any and all documents as may be necessary or desirable to consummate the transactions contemplated by the Asset Purchase Agreement. Any actions taken by the Debtors and the Buyer that were necessary or desirable to consummate such transactions prior to the entry of this Order are hereby ratified.

6. This Order and the Asset Purchase Agreement shall be binding upon the Debtors, all creditors and stockholders of the Debtors, and any trustees appointed in these proceedings or any trustees appointed in any subsequent proceedings under chapter 7 or chapter 11 of the Bankruptcy Code relating to the Debtors, and all other parties-in-interest herein.

7. The Asset Purchase Agreement and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto, in a writing signed by both parties, and in accordance with the terms thereof, without further order of this Court; *provided* that any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates.

8. The Buyer is hereby granted and is entitled to all of the protections provided to a good faith buyer under Bankruptcy Code section 363(m), including with respect to the transfer of

the Assigned Contracts as part of the sale of the Purchased Business Assets and the Purchased Real Property pursuant to Bankruptcy Code section 365 and this Order.

9. Pursuant to Bankruptcy Code sections 105(a) and 365, and subject to and conditioned upon the closing of the sale, the Debtors' assumption and assignment of the Assigned Contracts, in the manner contemplated and on the terms set forth in the Motion or the Asset Purchase Agreement, is hereby approved, and the requirements of Bankruptcy Code section 365(b) with respect thereto are hereby deemed satisfied.

10. Upon the closing of the sale, the Assigned Contracts shall be transferred to, and remain in full force and effect for the benefit of, the Buyer in accordance with their respective terms, notwithstanding any provision in any such Assigned Contract that prohibits, restricts, or conditions such assignment or transfer and, pursuant to Bankruptcy Code section 365(k), the Debtors shall be relieved from any further liability with respect to the Assigned Contracts arising after such assumption and assignment to the Buyer.

11. Any party having the right to consent to the assumption or assignment of the Assigned Contracts that failed to object to such assumption or assignment is deemed to have consented to such assumption and assignment as required by Bankruptcy Code section 365(c). Any anti-assignment provisions of the Assigned Contracts are unenforceable under Bankruptcy Code section 365(f).

12. Any non-debtor party to an Assigned Contract is hereby barred, enjoined and prohibited from asserting any claim or debt against the Debtors or their property or estates other than the Cure Amount for such Assigned Contract as set forth in **Exhibit C** to the Motion or from offsetting, seeking to offset, recoup, deduct or set-off any claims such party may have against the

Debtors from any amounts that may be or may become due in the future from or to the Buyer under such Assigned Contract.

13. Adequate assurance of future performance under the Assigned Contracts has been demonstrated by or on behalf of the Buyer, and the Buyer shall be entitled to have the Debtors assume such Assigned Contract, pursuant to Bankruptcy Code section 365, and to have such Assigned Contract assigned to the Buyer.

14. The failure of the Debtors or the Buyer to enforce at any time one or more terms of conditions of any Assigned Contract shall not be a waiver of such terms or conditions, or of the Debtors' or the Buyer's rights to enforce every term and condition of the Assigned Contracts.

15. After the payment of the Cure Amounts (if any) set forth in **Exhibit C** of the Motion with respect to the Assigned Contracts, the Debtors are not and will not be in default of any of their obligations under such contracts with the possible exception of defaults identified in Bankruptcy Code section 365(b)(2), which defaults, if any, are null and void and without effect.

16. Notwithstanding the terms of any chapter 11 plan in these cases or any order confirming a chapter 11 plan to the contrary, the Debtors are hereby authorized to reject the Rejected Contracts set forth in **Exhibit D** to the Motion effective as of the Sale Closing Date, even if the Sale Closing Date occurs after the effective date of such chapter 11 plan.

17. All rights and defenses of the Debtors in respect of the Rejected Contracts are preserved, including all rights and defenses of the Debtors with respect to a claim for damages arising as a result of the rejection of the Rejected Contracts, including, but not limited to any right to assert an offset, recoupment, counterclaim or deduction. In addition, nothing in this Order shall limit the Debtors' ability to subsequently assert that any particular Rejected Contract is not an executory contract or that any particular lease is a secured financing arrangement.

18. Any claims against the Debtors arising from the rejection of the Rejected Contracts must be filed in accordance with this Court's October 5, 2009 *Order Granting First Motion Pursuant to 11 U.S.C. §§ 105, 365, and 554 and Fed. R. Bankr. P. 6006, 9007 and 9014(I) Authorizing Rejection of Certain Executory Contracts and Unexpired Leases and the Abandonment of Related Property, Nunc Pro Tunc to the Petition Date and (II) Establishing Procedures for Future Rejection of Executory Contracts and Unexpired Leases and the Abandonment of Related Property* [D.I. 202]. For the avoidance of doubt, the effective date of the rejection of the Rejected Contracts shall be the Sale Closing Date, and not the date of this Order or the effective date of a chapter 11 plan in these cases.

19. The Buyer is not a "successor" to the Debtors or their estates by reason of any theory of law or equity, and the Buyer shall not assume, nor be deemed to assume, or in any way be responsible for any liability or obligation of any of the Debtors and/or their estates including, but not limited to, any bulk sales law, successor liability, liability or responsibility for any claim against the Debtors or against an insider of the Debtors, or similar liability except as otherwise provided in the Asset Purchase Agreement, and the Motion contains sufficient notice of such limitation in accordance with Local Rule 6004-1. Except as set forth in the Asset Purchase Agreement, neither the purchase of the Purchased Business Assets and the Purchased Real Property by the Buyer or its affiliates, nor the fact that the Buyer or its affiliates are using any of the Purchased Business Assets and the Purchased Real Property previously operated by the Debtors, will cause the Buyer or any of its affiliates to be deemed a successor in any respect to the Debtors' businesses within the meaning of (i) any foreign, federal, state or local revenue, pension, ERISA, tax, labor, employment, antitrust, environmental, or other law, rule or regulation (including without limitation filing requirements under any such laws, rules or regulations) for

purposes of this provision, the term "affiliate" shall mean each entity that is treated as a single employer with the Buyer, (ii) under any products liability law or doctrine with respect to the Debtors' liability under such law, rule or regulation or doctrine, or under any product warranty liability law or doctrine with respect to the Debtors' liability under such law, rule or regulation or doctrine, (iii) any employment or labor agreements, consulting agreements, severance arrangements, change-in-control agreements or other similar agreement to which the Debtors are a party, (iv) any pension, welfare, compensation or other employee benefit plans, agreements, practices and programs, including, without limitation, any pension plan of the Debtors, (v) any cessation of the Debtors' operations, dismissal of employees, or termination of employment or labor agreements or pension, welfare, compensation or other employee benefit plans, agreements, practices and programs, obligations that might otherwise arise from or pursuant to the Employee Retirement Income Security Act of 1974, as amended, the Fair Labor Standards Act, Title VII of the Civil Rights Act of 1964, the Age Discrimination and Employment Act of 1967, the Federal Rehabilitation Act of 1973, the National Labor Relations Act, the Consolidated Omnibus Budget Reconciliation Act of 1985, COBRA, or the Worker Adjustment and Retraining Notification Act, (vi) environmental liabilities, debts, claims or obligations arising from conditions first existing on or prior to the Sale Closing Date (including, without limitation, the presence of hazardous, toxic, polluting, or contaminating substances or wastes), which may be asserted on any basis, including, without limitation, under the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9601 *et seq.*, (vii) any liabilities, debts or obligations of or required to be paid by, the Debtors for any taxes of any kind for any period, (viii) any liabilities, debts, commitments or obligations for any taxes relating to the operation of the Purchased Business Assets and the Purchased Real Property prior to the Sale Closing Date, and (ix) any litigation.

20. Except as set forth in the Asset Purchase Agreement, pursuant to Bankruptcy Code sections 105 and 363, all persons and entities, including, but not limited to, the Debtors, the Committee, all debt security holders, equity security holders, the Debtors' employees or former employees, governmental, tax and regulatory authorities, lenders, parties to or beneficiaries under any benefit plan, trade and other creditors asserting or holding a Lien, Claim, Encumbrance or Interest of any kind or nature whatsoever against, in or with respect to any of the Debtors or the Purchased Business Assets and the Purchased Real Property (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to the Purchased Business Assets and the Purchased Real Property or the transfer of the Purchased Business Assets and the Purchased Real Property to the Buyer, shall be forever barred, estopped, and permanently enjoined from asserting, prosecuting or otherwise pursuing such Lien, Claim, Encumbrance or Interest, whether by payment, setoff, or otherwise, directly or indirectly, against the Buyer or any affiliates, successors or assigns thereof and each of their respective current and former members, officers, directors, managed funds, investment advisors, attorneys, employees, partners, affiliates, financial advisors and representatives (each of the foregoing in its individual capacity), or the Purchased Business Assets and the Purchased Real Property. For the avoidance of doubt, the foregoing shall not prevent the Debtors, their estates, successors or permitted assigns from pursuing claims, if any, against the Buyer and/or its successors and assigns in accordance with the terms of the Asset Purchase Agreement. Liens, Claims, Encumbrances and Interests shall attach to the net proceeds of the sale of the Purchased Business Assets and the Purchased Real Property received by the Debtors in the order of their priority, with the same validity, force and effect which they now have as against the Purchased Business Assets and the Purchased Real Property and subject to any

claims and defenses the Debtors or other parties may possess with respect thereto. The Debtors are authorized and directed to pay to JPMorgan Chase Bank, N.A. (the "<u>Administrative Agent</u>"), for the benefit of the lenders under the Credit Agreement, dated as of May 18, 2004 (as amended, supplemented or otherwise modified, the "<u>Prepetition Credit Agreement</u>"), 100% of the net proceeds resulting from the sale of the Purchased Business Assets and the Purchased Real Property within three business days after the Debtors' receipt thereof. All net proceeds that are paid to the Administrative Agent for the benefit of the lenders shall be applied to the Debtors' obligations under the Prepetition Credit Agreement.

21. All of the Debtors' interests in the Purchased Business Assets and the Purchased Real Property to be acquired by the Buyer under the Asset Purchase Agreement shall be, as of the Sale Closing Date and upon the occurrence of the closing, transferred to and vested in the Buyer. Upon the occurrence of the closing, this Order shall be considered and constitute for any and all purposes a full and complete general assignment, conveyance and transfer of the Purchased Business Assets and the Purchased Real Property acquired by the Buyer under the Asset Purchase Agreement and/or a bill of sale or assignment transferring good and marketable, indefeasible title and interest in the Purchased Business Assets and the Purchased Real Property to the Buyer.

22. Except as otherwise provided in the Asset Purchase Agreement, on the Sale Closing Date, the Debtors, the Buyer and each of the Debtors' creditors are authorized to execute such documents and take all other actions as may be necessary to release the Debtors' creditors' respective interests or claims against the Purchased Business Assets and the Purchased Real Property, if any, as may have been recorded or may otherwise exist.

23. Except as otherwise provided in the Asset Purchase Agreement, all persons or entities, presently or on or after the Sale Closing Date, in possession of some or all of the

Purchased Business Assets and the Purchased Real Property are directed to surrender possession of the Purchased Business Assets and the Purchased Real Property to the Buyer on the Sale Closing Date or at such time thereafter as the Buyer may request.

24. The failure specifically to include any particular provisions of the Asset Purchase Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Asset Purchase Agreement be authorized and approved in its entirety.

25. In the event of a failure to consummate the sale of the Purchased Business Assets and the Purchased Real Property after the entry of this Order because of a breach or default of the Asset Purchase Agreement by the Buyer, the next highest or otherwise best Alternative Qualifying Bid (if any), as determined by the Debtors and disclosed during the Sale Hearing shall be deemed the Successful Bidder without further order of this Court, and the parties shall be authorized to consummate the transaction contemplated by the Alternative Qualified Bid submitted by such Successful Bidder without further order of this Court, and the terms of this Order shall apply in equal force to the Successful Bidder.

26. Pursuant to Bankruptcy Code sections 328 and 330, the requested commission of DV&M in the amount of $91,500 and the requested reimbursement of expenses of DV&M in the amount of $1,094.58 are hereby allowed and approved in their entirety on a final basis, without the need for further application to this Court. The Debtors are authorized to remit payment to DV&M in the amounts set forth in this decretal paragraph, less any amounts previously paid on account of such commission and expense reimbursements.

27. The stay periods set forth in Bankruptcy Rules 6004(h) and 6006(d) are hereby waived.

28. This Court shall retain exclusive jurisdiction to resolve any dispute arising from or relating to the Asset Purchase Agreement or this Order.

Dated: Wilmington, Delaware
       March 9, 2009

Brendan L. Shannon
United States Bankruptcy Judge