# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| **Freedom Communications Holdings, Inc.**, *et al.*, | Case No. 09-13046 (BLS) (Jointly Administered) |
| Debtors. | Related to Docket Nos. 1963, 1968, 1969, 1973 |

# **OPINION**[1]

Before the Court is the FCH Litigation Trust's[2] Motion to Classify.[3] The Trust challenges the proof of claim filed by Katherine Gibson, one of the debtor's ex-employees, calling it tardily-filed and urging that it be classified as a subordinated claim under the confirmed plan of reorganization[4] (the "Plan") in this case. Freedom,[5] the former and now-reorganized debtor, agrees. Gibson argues, however, that it would be wrong to subordinate her claim for being tardy since, according to her, she never received notice of Freedom's bankruptcy or the claims bar date in the case. The evidence now before

---

[1] The Court's jurisdiction over this matter is not in dispute. It exists under 28 U.S.C. §§ 157 and 1334. Venue is also proper here under 28 U.S.C. §§ 1408 and 1409. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O). Moreover, the Court expressly retained jurisdiction over matters like this in §10.1(h) of the Plan (defined below).

[2] The Trust was created and empowered by the Plan (defined below) to act on behalf of certain of the debtor's unsecured creditors on a post-confirmation basis.

[3] Docket No. 1963.

[4] Docket No. 1150.

[5] The debtors in the Freedom family of bankruptcy cases consisted of fifty related corporate entities, but the Court refers to them collectively as Freedom, for simplicity's sake.

the Court, however, shows that Freedom sent the required notices to Gibson at the last-known address it had on file for her. Even though that address contained typographical errors, the Court holds that, under the circumstances of this case, the notice was reasonably calculated to apprise Gibson of both Freedom's bankruptcy and the claims bar date. Because Freedom satisfied its notice obligations, Gibson's claim is properly classified as a tardily-filed and subordinated claim under the Plan.

## I. BACKGROUND

From 2009 to 2010, Freedom was a debtor in this Court under chapter 11 of the Bankruptcy Code. 11 U.S.C. §§ 101, *et seq.* At the time, Freedom owned an Arizona-based newspaper called the East Valley Tribune. Gibson worked at the Tribune for nearly thirty years, until February 2008. Toward the end of her tenure, Gibson started alleging that certain managers and supervisors were mistreating her, which led her to file a discrimination action with the Equal Employment Opportunity Commission ("EEOC").[6] That action was under review at the EEOC when, on September 1, 2009, Freedom filed for bankruptcy. Freedom's bankruptcy case lasted until March 9, 2010, when the Court entered an order[7] (the "Confirmation Order") confirming the Plan and allowing Freedom to emerge from bankruptcy protection.

Several months after confirmation, Gibson, having received a "right to sue" letter from the EEOC, filed a complaint against Freedom in federal court in Arizona. In response, Freedom filed a motion[8] (the "Motion to Enjoin") in this Court, which the Trust joined, seeking to block the Arizona lawsuit. Freedom argued that because Gibson had not filed a proof of claim in its bankruptcy case, her claim had been discharged under the Plan and the Confirmation Or-

---

[6] *See* EEOC Charge No. 540-2007-01828C.

[7] Docket No. 1147.

[8] Docket No. 1821.

der, as provided for in §1141 of the Bankruptcy Code. 11 U.S.C. §1141(d)(1)(A) ("the confirmation of a plan … discharges the debtor from any debt that arose before the date of such confirmation …"). Gibson—acting without the assistance of counsel—objected,[9] saying that she received no notice of either Freedom's bankruptcy filing or the claims bar date in the case. On July 19, 2011, the Court held a hearing on the matter.

At that hearing, the Court denied the Motion to Enjoin. Much of the discussion centered around whether Gibson received adequate notice of the bankruptcy case and of the bar date. The Court became concerned when Freedom's counsel pointed out that the address for Gibson on Freedom's service list contained typos. Freedom had sent both the commencement and bar date notices to 8027 Del Cristel, Scottsdale, AZ 85258. It turns out, however, that Gibson's actual address is 8027 **E.** Del Crist**a**l, Scottsdale, AZ 85258. In light of that discrepancy, the Court stated: "[I]dentifying a mistake, even if it's described as a typographical error, … with respect to the address of the claimant in [Freedom's] records and in its affidavits of mailing is sufficient to provide at least a rebuttal to the presumption of delivery of mailing." (Mot. to Enjoin Hr'g Tr. 16:10-14, July 19, 2011.)[10] The Court gave Gibson thirty days to file her proof of claim.[11]

In so doing, the Court intended "to permit the late filing of a proof of claim" but leave "the treatment of that [claim]" as "an open question": "I want to be clear that I'm not ruling that this is a class (a)(4) claim or … a subordinated claim." (*Id*. 16:22-17:3.) Those issues were left for later. Indeed, the order entered after the hearing reflected that, if Gibson filed a claim, it would be subject to "all of [Freedom's] and the Trust['s] defenses to it." (*Id*. 17:5-6.) Specifically, the order provides:

---

[9] Docket No. 1828.

[10] Docket No. 1934.

[11] Neither Freedom nor the Trust asked the Court to reconsider its ruling, nor did they appeal it.

> All rights held by [Freedom] and the [Trust,] respectively,
> to object on any grounds to any proof of claim filed by
> [Gibson] in the above-captioned cases are fully reserved,
> including, but not limited to (i) the [Trust's] right to seek a
> determination that any proof of claim filed by [Gibson]
> may not be treated or discharged under [the Plan] and (ii)
> the rights of [Freedom] and the [Trust,] respectively, to
> argue that any proof of claim filed by [Gibson] may be
> subordinated under the Plan.

(Order Denying Mot. to Enjoin at 2.)[12]

For her part, Gibson filed a proof of claim[13] for $937,000 inside the thirty-day window. The Trust then responded by filing the Motion to Classify, asking the Court to, among other things, classify Gibson's claim as a "Subordinated Claim" under the Plan. Such a claim is defined in the Plan to include "any Claim that is tardily filed under Section 501(a) of the Bankruptcy Code…." (Plan §1.138(c).) Subordinated Claims do not receive any distribution under the Plan.

Freedom joined in the Motion to Classify and Gibson opposed it.[14] On December 12, 2011, the Court held oral argument.[15] The record now before the Court establishes that Gibson received adequate notice of the bankruptcy case and of the bar date. Her claim must therefore be considered tardy and treated as a Subordinated Claim under the Plan.

## II. LEGAL ANALYSIS

Parties are entitled to get adequate notice of proceedings that may result in the "judicial denial of [the] party's claimed rights." *City*

---

[12] Docket No. 1933.

[13] Claim Nos. 4471 & 4472.

[14] Technically, Freedom's joinder extended only to the subordination issue. Freedom disagrees with the Trust over how the Court should handle Gibson's claim if it were not subordinated. But because the Court finds that subordination is appropriate, the alternative arguments need not be addressed.

[15] Docket No. 1998.

*of New York v. New York, N.H. & H.R. R.R. Co.*, 344 U.S. 293, 297 (1953). Section 342(a) of the Bankruptcy Code, for instance, provides that "[t]here shall be given such notice as is appropriate ... of an order for relief in a case under this title." And Federal Rule of Bankruptcy Procedure 2002 requires that creditors receive notice of the claims bar date at least twenty-one days in advance. Fed. R. Bankr. P 2002(a)(7).

In *Mullane v. Cent. Hanover Bank & Trust Co.*, the Supreme Court held that for notice to satisfy due process it must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." 339 U.S. 306, 314 (1950) (calling notice "[a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality."). *Mullane* has been interpreted "to set the standard for notice required under the Due Process Clause in Chapter 11 bar date cases." *Jones v. Chemetron Corp.* ("Chemetron I"), 72 F.3d 341, 346 n.1 (3d Cir. 1995). Failure to meet that standard "is a serious procedural irregularity," *Constr. Drilling, Inc. v. Chusid*, No. 03-3786, 2005 WL 1111760, at *4 (3d Cir. May 5, 2005)—so much so that a claimant without appropriate notice is "not subject to the bankruptcy court's bar date order, and [its claim is] not discharged by [the] confirmation order." *Jones v. Chemetron Corp.* ("Chemetron II"), 212 F.3d 199, 210 (3d Cir. 2000).

Bankruptcy law divides creditors into two groups for purposes of notice: known and unknown creditors. Gibson was the former. From the outset of Freedom's bankruptcy case, Gibson was listed on Freedom's schedules as holding a disputed claim.[16] Known creditors must generally be provided actual written notice of a debtor's bankruptcy filing and the bar claims date in the case. *See Zurich Am. Ins.*

---

[16] As the holder of a claim "scheduled as disputed, contingent, or unliquidated," Gibson had to file a proof of claim in the case in order to "be treated as a creditor with respect to such claim for the purposes of voting and distribution." Fed. R. Bankr. P. 3003(c)(2).

*Co. v. Tessler (In re J.A. Jones, Inc.)*, 492 F.3d 242, 249 (4th Cir. 2007) (contrasting known creditors from unknown creditors, for whom constructive notice is constitutionally sufficient). Gibson says she received notice of neither. In the face of such a challenge, the burden rests with the debtor to show that it satisfied the notice requirements. *See Dependable Ins. Co. v. Horton (In re Horton)*, 149 B.R. 49, 57 (Bankr. S.D.N.Y. 1992). Typically, that task is not too onerous because a presumption that notice was received arises when mail is properly addressed, stamped, and deposited in the mail system. *Hagner v. United States*, 285 U.S. 427, 430 (1932).

Yet here, because the mailing address Freedom used for Gibson was incorrect, the Court ruled (at the July 19 hearing) that the presumption had been overcome. But that is not the end of the analysis. By allowing the Trust and Freedom to argue that Gibson's claim could be subordinated, the Court recognized that the issue of whether Gibson received adequate notice remained unresolved. Courts "assess the sufficiency of notice against the backdrop of the factual circumstances in each case." *Christopher v. Kendavis Holding Co. (In re Kendavis Holding Co.)*, 249 F.3d 383, 386-87 (5th Cir. 2001) (citing *Mullane*, 339 U.S. at 314). On the present record, the Court holds that the notice Freedom provided to Gibson satisfied the *Mullane* standard.

Recall that Freedom mailed both the commencement and bar date notices to Gibson at 8027 Del Cristel, Scottsdale, AZ 85258, rather than her true address, 8027 **E.** Del Crist**a**l, Scottsdale, AZ 85258. Despite that discrepancy, neither notice was returned as undeliverable.[17] (Logan Decl. ¶ 6.) Moreover, the undisputed record developed after the July 19 hearing reflects that Freedom had been using the same "address to send various communications, including W2 forms, to Gibson for at least seven years[,] [n]one of [which] were returned … as undeliverable." (Mitchell Decl. ¶ 4.) And Gibson, who

---

[17] The envelope in which the commencement and bar date notices were served included a return address for Logan & Company, Inc., the court-approved claims noticing and balloting agent in the Freedom case.

has been living in the house on E. Del Cristal for twenty-six years, did not dispute that she had received those documents. (Mot. to Enjoin Hr'g Tr. 12:24-25.) That is not altogether surprising, since there is no West, North, or South Del Cristal in her zip code, nor is there any street spelled C-r-i-s-t-e-l. (Mot. to Enjoin Hr'g Tr. 7:1-3.)

Most compelling, however, was evidence—introduced in connection with the Motion to Classify, and not before the Court at the July 19 hearing—that Gibson had failed to fix the erroneous address when given the chance, well before Freedom's bankruptcy. In the summer of 2006, Freedom changed payroll systems. (Mitchell Decl. ¶ 5.) As part of that process, Freedom required all of its employees to complete an information verification form, which asked the employees to verify, among other things, their then-current mailing address. (*Id.*) The address listed on the form sent to Gibson was 8027 Del Cristel, Scottsdale, AZ 85258. (*Id.*) Although Gibson updated her home phone number and emergency contact information, she did not correct the erroneous address. (*Id.*) Instead, she simply signed the form and sent it back to the company, as instructed. (Freedom Joinder Ex. C)[18] Freedom could thus reasonably expect that sending Gibson notices at the address in its employment files would reach her. The Court finds that here, as is generally the case, mailing a notice to a party's last-known address is "reasonably calculated" to provide actual notice. *See Tulsa Prof'l Collection Servs., Inc. v. Pope*, 485 U.S. 478, 490 (1988) ("We have repeatedly recognized that mail service is an inexpensive and efficient mechanism that is reasonably calculated to provide actual notice").

Throughout this dispute Gibson has found Freedom to be "preoccupied with the fact that there was a misspelling on [her] address label." (Mot. to Enjoin Hr'g Tr. 10:7-11.) Gibson acknowledged she "wasn't even aware of" the error, "and so that was not the issue

---

[18] Docket No. 1969.

with [her] not getting the [notice]."[19] (*Id*.) Rather, Gibson argues that she "did not receive any notice at all." (*Id*. 13:15). She also point to the fact that the commencement and bar date notices were absent from the file that the EEOC maintained on her discrimination action. But without some evidence as to the EEOC's operations, the absence of those notices from Gibson's EEOC file does not advance her cause much. Nor, frankly, do her allegations that she did not receive notice. *See In re Grand Union Co.*, 204 B.R. 864, 870 (Bankr. D. Del. 1997) ("[T]he presumption is not rebutted by a mere denial of receipt by the creditor.") Gibson's mere denials are overcome by the significant evidence that Freedom made reasonably calculated efforts to notify Gibson of the case and of the bar date. *See id*. ("[T]he bar date notice is presumed to have been received by the creditor when, as here, the debtor offers proof that it was timely and properly mailed by the debtor.") In sum, because service of the commencement and bar date notice on Gibson at the address listed in Freedom's employment file was sufficient to satisfy due process, Gibson is bound by the terms of the Plan, under which her late-filed claim is classified as a Subordinated Claim.

### III. CONCLUSION

For the reasons stated above, the Court **GRANTS** the Motion to Classify. Gibson's claim is a Subordinated Claim under Freedom's Plan.

**BY THE COURT**:

Dated: May 31, 2012
Wilmington, Delaware

Brendan Linehan Shannon
United States Bankruptcy Judge

---

[19] Gibson used the word "claim" instead of "notice" but it is clear that she meant the latter.